## ALLEN v. O'DONALD.

*(Circuit Court, D. Oregon. August 18, 1886.)*

1. DISCHARGE OF SURETY BY EXTENSION OF TIME TO DEBTOR.
   What constitutes an extension of time by a creditor so as to discharge a surety considered, and the former ruling in this case adhered to. 28 Fed. Rep. 17.

2. STATUTE OF LIMITATIONS.
   A mortgage given to secure a note is a mere incident thereto. and a payment on the latter which has the effect to prolong the time within which a suit may be brought thereon has the same effect on the former.

3. SAME.
   Payment on a debt evidenced by a note and secured by a mortgage, under section 25 of the Code of Civil Procedure, is a payment on the latter as well as the former, and marks the point of time in the one case as well as the other from which the statute of limitations runs.

4. SURETY.
   A mortgagor of property to secure the note of another is so far a surety for such other, and a payment by the maker of the note has the same effect on the mortgage as if the mortgagor was a joint maker of the note.

On Rehearing. Suit to enforce the lien of a mortgage.
*C. E. S. Wood* and *George H. Williams*, for plaintiff.
*Wm. H. Holmes*, for defendants.

DEADY, J. On the nineteenth ult. an opinion was announced in this case in favor of the plaintiff. Thereupon the defendants, Edward C. and Frank R. Cross, applied for a rehearing on the questions of the extension of time by the creditor and the statute of limitations, which was had.

On the first point it is insisted that an agreement for the extension of time may be implied from circumstances, including the action of the parties thereunder; citing Brandt, Sur. § 304. Doubtless this

is a correct statement of the law. But whether the agreement is expressed or implied, it is not valid, unless for a definite time, and founded on a sufficient consideration. And mere delay or forbearance to sue, though had in pursuance of an understanding between the parties, does not furnish ground for any such implication.

The claim that there was an extension of time by the creditor to the debtor is wholly based on the sale of a portion of his interest in the mortgaged premises, by Cross, the principal debtor, to Lewis, the creditor, in trust, that he would dispose of the same, with the consent of Cross, release the lien of the mortgage thereon, and apply the proceeds on the debt. The mere sale was certainly an indifferent act in this respect. Cross had a right to sell his property, subject to the mortgage, to whom he pleased, and neither the right nor liability of the surety could by any possibility be affected thereby. And he and the creditor had a right also to agree that so fast and far as the property was disposed of by Lewis, the lien of the mortgage thereon should be discharged; the proceeds of such sales being applied on the debt.

None of the acts embraced in this arrangement and constituting this transaction had the least effect on the surety's right to pay the debt and be subrogated to the right of the creditor to enforce the lien of the mortgage. However long the creditor might delay or forbear the collection of his debt by legal proceedings on this account, or any other voluntary arrangement or understanding, he was at no time legally bound to forbear such proceeding, and unless he was, the surety cannot be heard to complain; and I do not think he ought to then, unless he can show that he was injured by the delay. But at present the weight of authority is otherwise, though I think the tendency of judicial utterance and opinion is in that direction, and may yet reach there. The only risk or obligation that the creditors took or undertook in this arrangement was that the property should be fairly sold, and the proceeds applied so as to reduce the liability of the surety's property in a corresponding degree. As was said in the opinion of the court:

"It may be even admitted that this arrangement with Mr. Lewis fairly implied that the firm of Allen & Lewis would, while it was being carried out, forbear to sue the debtor. But there is no evidence of any agreement thereabout or consideration therefor. An agreement to give the debtor time is not binding unless made for some definite period and on a sufficient consideration. And although the creditor should, in pursuance of an agreement or understanding, express or implied, actually forbear to sue for a given length of time, but without any consideration therefor, the surety is not thereby discharged. And the reason is apparent. Such an arrangement is not binding, and therefore it does not prevent the surety from paying the debt, and proceeding with the right of the creditor to enforce the claim against the debtor. Brandt, Sur. § 296." 28 Fed. Rep. 23.

But the fact is, there was no delay worked or intended by this arrangement. As far as it went, it was evidently intended as a sub-

stitute for legal proceedings, than which it might reasonably have been thought more expeditious and economical, and probably was so. So far as the surety was concerned the creditor could take his own time to enforce his claim against the principal debtor. If the surety was not satisfied with the delay, it was her right, or that of her representatives, to pay the debt and enforce the same against the principal and his property. It is a mistake to suppose that a surety's obligation goes no further than a guarantor's, and may be discharged by the mere indulgence of the creditor. The contract of the latter is collateral to and separate from that of the principal, and is often founded on a separate consideration, while that of the surety is direct, being the same with the principal and founded on the same consideration. Brandt, Sur. § 1. When security is taken, the debt, so far as the creditor is concerned, is the debt of the surety, and the law presumes that the credit was given to him. He is an original promisor, and unless excused by the fact of time give to the creditor, or the misapplication of the pledge given by the debtor, it is his duty to pay the same, as if it was in fact his own debt. Therefore, the law is not watchful or swift to find a loophole or technicality through which he may escape his liability. And where property is mortgaged by the owner to secure the debt of another, such property occupies the position of a surety, and is liable for the payment of the debt accordingly. Brandt, Sur. §§ 21, 22; 1 Jones, Mortg. § 114.

As to the statute of limitations, counsel now make the point that as the statute commenced to run against the mortgage executed by Pluma F. Cross on January 23, 1873, the remedy thereon was barred before the commencement of this suit, on February 5, 1884. In this connection counsel cites and relies on a case decided in this court— *Eubanks* v. *Leveridge*, 4 Sawy. 274. That was a suit on a mortgage by an assignee of the mortgagee therein, against the grantee of the mortgagor. The defendant was not liable on the note which the mortgage was given to secure, but only as the successor in interest of the mortgagor in the land. The mortgagor, the maker of the note, was not a party to the suit, and the note was not regarded as being in the case. More than 10 years had elapsed since the note became due, and it was conceded that the remedy on the mortgage was barred unless a certain time during which the mortgagor was out of the state, after the right of action accrued on the note, should be deducted from the limitation prescribed by the statute, as provided in section 16 of the Code of Civil Procedure, which declares, in effect, that the time during which a person is out of the state after an action accrues against him shall not be deemed or taken as a part of the limitation. The court, following the decision in *Anderson* v. *Baxter*, 4 Or. 107, held that a suit to enforce the lien of a mortgage being in effect a proceeding *in rem* and not "against" any "person," the qualification contained in said section 16 did not apply, for the reason that the absence of the mortgagor or debtor from the state did not prevent the

prosecution of such a suit. The mere statement of the case shows it has no application to this, which is a suit on a promissory note secured by a mortgage, in which the remedy on the note is confessedly not barred by lapse of time. The time within which the suit may be brought on the note has been extended by the payment of interest thereon. And the question is, while the note is kept alive by this means can the security die? As was said in the opinion of the court (28 Fed. Rep. 26) the mortgage or security is a mere incident of the debt and passes with it. Therefore, a transfer of a note carries with it all securities for its payment, whether a mortgage or otherwise. It is the debt that gives character to the mortgage and determines the rights and remedies of the parties to the transaction. 1 Daniel, Neg. Inst. §§ 748, 834, *et seq.*

On principle, then, whatever act or fact operates to keep the note alive, and prevents the statute from running against the remedy thereon, ought to have the same effect on the security. The one is the personal obligation of the party, and the other is the particular thing or means set apart and pledged for its fulfillment and performance. So long as this obligation lives, and a suit against the maker can be maintained thereon, the security for its payment should be subject to enforcement also. *Ewell* v. *Daggs*, 108 U. S. 146; S. C. 2 Sup. Ct. Rep. 408.

But under section 25 of the Code of Civil Procedure, which declares that "whenever any payment of principal or interest" is made on "an existing contract, whether it be bill of exchange, promissory note, bond, or other evidence of indebtedness," after the same becomes due, "the limitation shall commence from the time the last payment was made," I am unable to see why the payments which confessedly kept alive the remedy on the note did not directly have the same effect on the mortgage. In addition to being an incident of the note, it is a "contract," and "evidence of indebtedness," and the payments were as much made on it as on the note. The payment was made on the debt, and affected the mortgage as well as the note. It extinguished so much of the latter for which the former is security, and the unsatisfied existence of the one was as much acknowledged thereby as the other. The statute expressly declares that a payment on the "contract" shall have the effect to postpone the running of the statute until from and after the date of the last payment, and, in my judgment, that logically and legally includes the mortgage, as well as the note it was given to secure.

The argument for the defendants practically admits this proposition, in case of a mortgage by the principal debtor, or even in the case of a surety by mortgage or pledge, who is also a party to the promise to pay, but denies it where the surety is not personally bound. The rule at common law was that a payment by the principal, even after the statute had run, revived the debt against the surety as well as himself. See *Sigourney* v. *Drury*, 14 Pick. 387,

cited in the opinion of the court. Some, if not many, of the states have changed this rule by statute. But this state has simply declared the effect of payment, "whenever" made, to be the establishment of a new point of time from which the statute shall run, divested of all the subtleties which had grown up around the subject. The supreme court of the state in *Sutherlin* v. *Roberts*, 4 Or. 378, held that any person who can be compelled to pay a note is competent to make a payment thereon, under said section 25. Thomas Cross was liable to pay this note, and a payment made by him thereon was a payment within that section. In that case more than 10 years had elapsed since the note became due that the mortgage was made to secure. The note and mortgage were made by the defendant Jane Roberts, and the deceased, Jesse Roberts, who was in fact her husband, though that does not distinctly appear in the report of the case. And the mortgage must have included the property of the wife, as well as that of the husband. There was a payment by the administrator of the deceased, out of the assets of his estate, less than 10 years before the commencement of the suit, so that the statute had run against the note but not the mortgage, provided full effect was given to this payment as against the latter. The right of the administrator to make the payment, under section 25 of the Code, was contested on the ground that he was a volunteer. But the court held that as he could be compelled to pay the note so far as he had assets, his payment with them was within the statute, and constituted the point of time from which the limitation commenced. This being so, it was taken for granted by court and counsel that the payment on the debt had the same effect on the mortgage that it had on the note, and, therefore, the suit to enforce the lien of the mortgage was not barred.

As we have seen, Pluma F. Cross is, as to her property included in this mortgage, a surety for the payment of this debt as much as if she had signed the note given for the same. Her principal made the payments on this debt, for which in her property she was surety, and by so doing he prevented the statute from running against it before the commencement of this suit. While the remedy on the note is not barred, neither is that on the mortgage, either because it is a a mere incident of the note and follows it, or the payment was, under the statute, made on the mortgage as well as the note, and had the same effect on the former as the latter.

And why should the statute run against the mortgage and not against the note? They are essential parts of the same transaction. 1 Jones, Mortg. § 71. The one is the complement of the other. The mortgage was given to secure the payment of the note, and presumably the creditor relied on it exclusively. And whatever act of the parties, or either of them, that has the effect, under the law, to delay the running of the statute against the promise to pay the debt, ought, in justice and right, to include the security given for its payment.

The surety executed the mortgage presumably with a knowledge of the law, as to the effect of payment by the principal, and must be deemed and taken to consent to it, and be bound accordingly. The former ruling is adhered to.