II. HACKFELD AND COMPANY, LIMITED, A COR-
PORATION, *v.* FRANK A. MEDCALF, ADMINIS-
TRATOR OF THE ESTATE OF JOHN KAI AKINA,
DECEASED; MELE KAHANA, AND S. K. KAHA-
NA, HER HUSBAND, D. D. ROTONO KAI AND
MANOA KAI, HIS WIFE, KAHILO MEDCALF
AND FRANK A. MEDCALF, HER HUSBAND,
JOHN KAI JR., AND ANNIE AKAMU KAI, HIS
WIFE; KAWAAUHAU AKINA, WIDOW OF J. K.
AKINA JR., DECEASED; MARIA KAI, AND JOHN

KAIU, WILLIAM KAI, AND DAVID KALUNA KAI, MINOR CHILDREN OF J. K. AKINA JR., DECEASED; AND HATTIE KAWAAUHAU AKINA, GUARDIAN OF SAID MINORS, AND FIRST BANK OF HILO, LIMITED, A CORPORATION.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED FEBRUARY 3, 1910.          DECIDED FEBRUARY 16, 1910.

HARTWELL, C.J., PERRY AND DE BOLT, JJ.

PRINCIPAL AND SURETY—*husband and wife.*

A wife may be surety for her husband and the law of suretyship, requiring strict compliance with the contract on the part of the principal, applies.

A wife by signing with her husband a mortgage of her separate property to secure the husband's debt is prima facie surety for her husband.

OPINION OF THE COURT BY DE BOLT, J.

This is an interlocutory appeal by the defendants, Maria Kai, John Kaiu, William Kai and David Kaluna Kai, from an order of a circuit judge of the first circuit overruling their demurrer to the plaintiff's bill, the other defendants having answered. These four defendants—appellants herein—were made parties to this suit and are prosecuting this appeal as the heirs of one Malia Kekula Akina, deceased.

For the purpose of considering the demurrer, we deem the following averments of the bill pertinent and sufficient, namely:

"That on or about the 1st day of May, A. D. 1903, the said John Kai Akina, since deceased, being desirous of engaging in business on the island of Hawaii, and to secure from plaintiff the means so to do, entered into an agreement in writing with plaintiff wherein the said John Kai Akina and Malia Kekula Akina his wife, for the consideration therein partly disclosed, covenanted and agreed with plaintiff to make, execute and 'deliver

to plaintiff and to its successors and assigns, a good, valid and sufficient mortgage upon certain land and premises in said writing particularly described, for the sum of $1,000.00 and to be a continuing security for the purpose of securing from plaintiff future advances in money and in goods, wares and merchandise for said business, not to exceed the sum of $4,000.00, the amount of said advances to be ascertained by reference to the books of said H. Hackfeld and Company, Limited; and also providing for stipulations to be in said contemplated mortgage contained—a copy of which said agreement is hereto attached, marked 'Exhibit A,' incorporated in and made a part hereof."

The agreement, ("Exhibit A"), reciting: "That whereas the said John Kai Akina, one of the parties of the first part, is about to apply for a license to sell liquor at retail in Waiohinu, Kau, Island and Territory of Hawaii, and whereas the said John Kai Akina is desirous of borrowing from the said party of the second part money in an amount sufficient to pay the cost of said license and all the expenses connected with obtaining the same; and whereas the said John Kai Akina is desirous of obtaining from said party of the second part, at market rates, all goods, wares and merchandise necessary to begin and conduct his business under said license;

"Now, therefore, for and in consideration of the mutual covenants and agreements hereinafter contained the parties of the first part agree that the said John Kai Akina shall, within one week from and after the date of this agreement apply to the Treasurer of the Territory of Hawaii for a retail liquor license as aforesaid; and if said application is granted, the said party of the second part hereby agrees to lend to said John Kai Akina, an amount sufficient to cover the cost of said license and the expenses of obtaining the same upon the following terms and conditions;

"The said John Kai Akina to apply the amount so advanced, to the payment of said cost and expenses and the said parties of the first part to make, execute and deliver to the said party of the second part and to its successors and assigns a good, valid

and sufficient mortgage upon the following land and premises, to wit:" (Here follows the description of three pieces of land, one piece being that of Malia Kekula Akina).

"Said mortgage to be for $1000.00 and to be a continuing security for the purpose of securing future advances in money and in goods, wares and merchandise, not to exceed the sum of $4000.00, the amount of said advances to be ascertained by reference to the books of said H. Hackfeld & Company, Limited, said mortgage to be payable three years after its date with interest, payable quarterly, at the rate of nine per cent per annum, and to contain a provision that all rents, issues and profits arising from said property shall be payable to said H. Hackfeld & Company and applied toward the payment of said mortgage.

"And the said parties of the first part, in consideration of the foregoing, agree, upon receiving the amount required for said license, to make, execute and deliver to said H. Hackfeld & Co., Ltd. the above described mortgage.

"As witness the hands of the parties hereto, the day and year first above written.

   (s.)  Paul Rokono Kai (oia no J. K. Akina).
   (s.)  M. K. Rokono Malic Ke Kulu Akina.

Witnesses:

 (s.)  Wm. H. Beers."

The bill then alleges: "That in pursuance of said agreement the said John Kai Akina did enter upon and engage in said business, according to the intent of the parties, as in said writing particularly set out; and in compliance with the stipulations on its part to be performed the plaintiff, H. Hackfeld and Company, Limited, did lend money and furnish means and goods, wares and merchandise to said John Kai Akina, and did advance money to said John Kai Akina for the purposes aforesaid; and to secure the payment for which the said John Kai Akina had covenanted to execute and deliver said mortgage."

The bill shows that Malia Kekula Akina died September 26, 1904, without having executed the mortgage referred to in the agreement of May 1, 1903.

The bill also shows that on November 16, 1904, John Kai

Akina and certain of the heirs of Malia Kai Akina, other than the appellants, executed to plaintiff a mortgage covering the lands described in the said agreement.

We also deem it proper to state that the purpose of the bill is to have this agreement of May 1, 1903, and the mortgage of November 16, 1904, construed as one instrument and decreed to be a valid and subsisting mortgage and lien upon all the lands therein described, including all the right, title and interest of the appellants therein, and that the same be foreclosed and the lands therein described sold to satisfy plaintiff's claim.

The demurrer is based upon several grounds, but the ground particularly urged, is that the bill is fatally defective in that it does not allege with sufficient certainty, if at all, any particular place on the Island of Hawaii where Akina engaged in and carried on his said business, referred to in the agreement of May 1, 1903.

In this connection it will be observed that the agreement of May 1, 1903, recites that Akina "is about to apply for a license to sell liquor at retail in Waiohinu, Kau, Island and Territory of Hawaii," and that he "is desirous of borrowing from the party of the second part money in an amount sufficient to pay the cost of said license and all the expenses connected with obtaining the same;" and that he, also, "is desirous of obtaining from said party of the second part, at market rates, all goods, wares and merchandise necessary to begin and conduct his business under said license." The bill, in this regard, alleges that Akina "being desirous of engaging in business on the Island of Hawaii," entered into this agreement, and "that in pursuance of said agreement the said John Kai Akina did enter upon and engage in said business, according to the intent of the parties, as in said writing particularly set out."

It is urged on behalf of the appellants that the debt about to be incurred at the time the agreement was signed, and which was subsequently incurred, was the debt of Akina, the hus-

band; that the facts disclosed by the pleadings show that Mrs. Akina, the wife, signed the agreement merely as surety for her husband; that the wife's contract of suretyship was executory and conditional; that she bound herself to execute a mortgage of her land, not unconditionally, or at all events, but upon all the conditions set forth in said agreement, more particularly, on condition that her husband would apply for and obtain "a license to sell liquor at retail in Waiohinu, Kau, Island and Territory of Hawaii," and that he would there establish and carry on his said business, and not elsewhere.

Plaintiff contends that under the pleadings the wife was not a surety for her husband, at least so far as the plaintiff is concerned, and that there is equity in the bill, and, consequently, the decree appealed from should be affirmed.

Plaintiff also contends that the wife could not have been a surety, because if she were there must have been a contract, either express or implied, between her and her husband, and that under Sec. 2252, R. L., a married woman has no power to contract with her husband.

In 27 Am. & Eng. Ency. Law, 434, it is said: "A married woman may usually pledge or mortgage her separate property to secure the debt of her husband. Consequently where a wife pledges or mortgages her separate property for her husband's debt, she occupies the position of surety in respect to such mortgaged property."

While it is true, under our statute, a married woman cannot contract with her husband, there is no reason or rule of law prohibiting her from entering into a contract as surety for her husband. Indeed, the statute (Sec. 2252, R. L.), cited by counsel for plaintiff, with two exceptions only, and the contract of suretyship is not one of those, provides that "A married woman may make contracts, oral and written, sealed and unsealed, in the same manner as if she were sole." This language is broad and comprehensive, and we think includes the contract of suretyship.

Stewart, on Husband and Wife, at page 202, says: "In some States statutes expressly, or by necessary implication, prohibit a wife's contracts as surety for her husband. But such is not the effect of statutes forbidding contracts between husband and wife." The author cites in support of the text, *Major* v. *Holmes,* 124 Mass. 108, wherein the court held, under a statute, the language being identical with that of our statute, that a promissory note made by a married woman jointly with her husband, for no other consideration than a debt of his to the payee, binds her.

Stewart, supra, at page 203, also says: "Whenever a wife conveys or mortgages her property, or binds herself for her husband's debt she does so prima facie simply as his surety."

Schouler on Domestic Relations (5th ed. Sec. 95), says: "Whenever the wife joins her husband in a mortgage of her own property to secure his debts or the payment of money loaned to him, she is merely the surety of her husband, and is entitled to all the rights and privileges of a surety. This rule is well settled."

See also *Spear* v. *Ward,* 20 Cal. 660, 674, *Bank* v. *Burns,* 46 N. Y. 170, 174, 175; *Miner* v. *Graham,* 24 Pa. St. 491, 495; *Loomer* v. *Wheelwright,* 3 Sandf. Ch. 135; *Allen* v. *O'Donald,* 28 Fed. 346; *Campion* v. *Whitney,* 30 Minn. 177; 21 Cyc. 1321, 1322; Jones on Mortgages, Secs. 114, 949.

Applying the rules laid down by the authorities to the facts as disclosed by the pleadings in the case at bar, it is clear that the debt contracted was the husband's and that the wife signed the agreement of May 1, 1903, merely as surety.

The further question to be considered, is whether the bill shows a compliance with the terms and conditions of the agreement of May 1, 1903. This being a contract of suretyship on the part of the wife, it was incumbent on plaintiff to set forth in the bill all essential facts showing a literal compliance with the terms and conditions upon which the wife became a surety.

There can be no question but that a surety is entitled to stand upon the letter of his contract, and his undertaking is to be construed strictly in his favor and is not to be extended by implication or inference beyond the fair scope of its terms.

In *Miller* v. *Stewart*, 9 Wheat. 680, 701, Mr. Justice Story, said:

"Nothing can be clearer, both upon principle and authority, than the doctrine, that the liability of a surety is not to be extended, by implication, beyond the terms of his contract. To the extent, and in the manner, and under the circumstances, pointed out in his obligation, he is bound, and no further. It is not sufficient, that he may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and a variation is made, it is fatal. And courts of equity, as well as of law, have been in the constant habit of scanning the contracts of sureties with considerable strictness."

Counsel argue that the allegation in the bill that the money was loaned, the advances made and the business engaged in on the Island of Hawaii generally is sufficient; that it was not material where the business was to be carried on; that the change of location (it being admitted that the business was established in Hilo) was immaterial; that the main thing was the money loaned and advanced and the furnishing of the goods. We cannot concur in this view.

It is immaterial, as we view it, whether Hilo was a better place for Akina to engage in business than Waiohinu, or not. The wife, as the facts appear, signed the agreement as surety, and with the understanding that the business was to be carried on in Waiohinu. That was her contract. Whether she was wise in preferring Waiohinu to Hilo is not for us to decide. The bill is fatally defective in not alleging that Akina established and conducted the business provided for in the agreement, at Waiohinu.

We do not pass upon the plaintiff's right under its pleadings.

and claimed in argument only to show that the husband and wife actually intended that she should be bound as a principal and not as a surety, for the pleadings do not contain any averment to that effect.

The order of the circuit judge overruling the demurrer is reversed and the cause is remanded.

*Thompson, Clemons & Wilder* for plaintiff.

*C. F. Peterson and W. C. Achi* for defendants.