## IN THE MATTER OF THE ESTATE OF MANUEL PINHEIRO, DECEASED.

### No. 2149.

SUBMITTED OCTOBER 22, 1934.    DECIDED NOVEMBER 9, 1934.

COKE, C. J., BANKS AND PARSONS, JJ.

On June 16, 1931, Manuel Pinheiro, a resident of the County of Maui, died intestate, leaving property located in the county of his residence and in the City and County of Honolulu. On August 28, 1931, the Union Trust Company, Limited, was duly appointed administrator and letters of administration were issued. On December 21, 1932, the administrator filed in the circuit court of the second circuit its final account and prayed for its allowance and a discharge. The account was referred to a master who, with the exception of one item which he advised should be disapproved in part and another item upon which he expressed no opinion, recommended that the account be approved. After the filing of the master's report Daniel Pinheiro, Sr., the father of the intestate, and Augusta Pinheiro, his mother, both heirs at law of the intestate, filed certain objections to the master's report. With the exception of two items of expenditure by the administrator, one of which the circuit judge disallowed completely and the other of which he disallowed as to a portion of the amount and allowed as to the remainder, the account was approved. It is conceded by counsel for the administrator that it was error to have disallowed any portion of this latter item and that the entire amount of $47, which comprised it, should have been surcharged. The objecting heirs have brought the case here on writ of error.

The first assignment of error which we will consider, being assignment number three, presents the question of whether the sum of $24.28, which was paid by the widow of the deceased subsequent to his death and for which she was reimbursed by the administrator out of the intestate's estate, was a proper charge against the estate. The contention is that this amount was paid by the widow to secure "the services of some Catholic priest in saying certain prayers and certain other services for and in behalf

of the soul of the deceased." The record shows that of this amount $12.23 was paid by the widow for certain items which were purchased by her husband from the Maui Agricultural Company prior to his death. The liability of the estate for these items is not challenged. The remaining items, aggregating $12.05, were purchased by the widow as a part of the services rendered in connection with her husband's funeral.

The circuit judge held that the deceased during his life was a member of the Catholic faith and that his heirs were also members of that faith. The evidence shows that the sum of $12.05, the proper expenditure of which is questioned, was used to dress up a poor boy for the soul of the deceased and that this was in conformity with a custom among Catholics. Under these circumstances, the reasonableness of the amount expended not being questioned, we think there was no error in allowing it.

In 3 Schouler, Exec. & Admin., it is said (§ 2758) : "The religious persuasion of the deceased, or, perhaps, of his immediate family, may be fairly considered in determining the character and items of cost in the funeral; thus, Jewish, Christian, and Pagan usages differ on these points, likewise Catholic and Protestant, nor do all Protestant sects agree among themselves. National habits, and those of one's birthplace, besides, deserve consideration, whatever be the last domicile. The presumption is that the deceased has desired to be buried in accordance with the usages and customs, civil and religious, of the society to which he belonged, and so as to retain its respect." 24 C. J. (p. 307) says: "The funeral expenses include not only the solemnization of the interment, but also the ceremonies and accompaniments attending the same."

Assignment number seven is similar to the assignment just considered. It presents the question of whether cer-

tain expenditures amounting to $63, made by the widow in connection with the funeral expenses of her husband, and for which she was reimbursed by the administrator, were a proper charge against the estate. The record shows that these expenditures were for "masses, candles, funeral expenses" and clothing used to dress the deceased for burial. There can be no question that these items were reasonable funeral expenses and were therefore properly allowed by the circuit judge.

The next assignment of error we will consider is number four. It is there claimed that the court erred in sustaining a reimbursement made by the administrator to the widow for moneys paid out by her, amounting to $56.24. It is alleged in the assignment that this expenditure by the widow, as shown by voucher 33, was for the purpose of making "a gift of clothing after the date of death of decedent." An examination of this voucher discloses that not a single article of clothing is included. Futhermore, it appears from the voucher that all of the purchases therein itemized were made during the lifetime of the decedent. The alleged error, having no factual support, is of course without merit.

We will next consider assignment of error number five. This assignment relates to an item of $3,210, which was expended by Virginia Pinheiro, the widow of the decedent, in order to relieve her land, which was a part of her separate estate, from a mortgage executed by her to secure the payment of money loaned by a third person to her husband. The administrator reimbursed the widow out of the decedent's estate and the reimbursement was approved by the circuit judge. The circumstances under which the mortgage was given were as follows: Manuel Pinheiro, the decedent, desired to purchase from one Phillip a certain parcel of land located at Kula on the Island of Maui. The purchase price was $18,000, of which amount Phillip

required a cash payment of $3,100. Manuel Pinheiro, not having this amount at hand, obtained a loan from Manuel G. Cardoza. In order to secure the payment of the loan Virginia Pinheiro executed the mortgage referred to. Manuel Pinheiro, her husband, for the purpose of releasing any interest he might have in the mortgaged premises, also signed the mortgage. A promissory note for the amount loaned was executed by Manuel and Virginia Pinheiro. The amount borrowed from Cardoza was paid over by him to Pinheiro and used to make the initial payment to Phillip on the Kula land. Phillip thereupon executed a deed to Pinheiro conveying the land to him.

It is contended by the objecting heirs that the widow had no valid claim against her husband's estate for the reason that there was no enforceable obligation on the part of her husband to repay to her the money that had been borrowed on the security of her property. In other words, if the mortgage of the wife's property to secure the loan created any obligation on the part of the husband to protect her against loss such obligation could only arise out of a contract between them and that such contract, being forbidden by section 2994, R. L. 1925, as amended by Act 146, L. 1931, was therefore void. This contention is not sound. The circumstances under which the money was borrowed from Cardoza clearly created between Manuel Pinheiro and Virginia Pinheiro the relation of principal and surety. Primarily it was Manuel Pinheiro's obligation. The money was borrowed by him and was used by him for his own benefit. Upon his failure to discharge his debt his wife, in order to rescue her own property from the mortgage, paid the amount of the loan together with interest and obtained a cancellation of the mortgage. Her claim against her husband's estate did not therefore depend on a contract between him and her but arose out of her rights as a surety. That a wife may, notwithstanding

the statute, lawfully become surety for her husband is settled in *Hackfeld & Co.* v. *Medcalf,* 20 Haw. 47.

In *Browne* v. *Bixby,* 190 Mass. 69, a bill in equity was brought by the administrator of a married woman against the executors of her husband for the purpose of relieving the former's estate from the liability of a note jointly executed by the husband and wife. It appeared from the bill that the note was given for a loan made to the husband and that the wife had mortgaged her own property to secure the note. A demurrer was interposed to the bill on the ground that the transaction was a contract between husband and wife and that such a contract could not be enforced either by a court of law or a court of equity. The trial court sustained the demurrer and dismissed the bill. The supreme court in reversing the decree said (pp. 70, 71) : "The foundation of the suit is not a contract made by the husband with his wife, but the application of a familiar law of suretyship, which gives a surety a right, as between him and his principal, to be reimbursed for his payments and relieved from liability for outstanding debts by the principal who is primarily liable for them. The relation of husband and wife, existing between the principal and the surety, does not prevent the enforcement of this general rule. In *Minot, petitioner,* 164 Mass. 38, 41, the law is stated by Mr. Justice Allen as follows: 'When a husband and wife join in a mortgage of her land to secure a debt of the husband, her estate is considered only as a security for the debt, for which the husband and his estate are primarily liable; and the wife or her heir, after the death of the husband, will be entitled to have it exonerated out of the estate of the husband.' In *Savage* v. *Winchester,* 15 Gray, 453, 455, the subject is fully discussed by Mr. Justice Hoar, with a citation of the authorities, and the rule is stated broadly in similar language. In *Robinson* v. *Gee,* 1 Ves. Sr. 251, 252, Lord Hardwicke

said, 'It is a common case for a wife to join in a mortgage of her inheritance for a debt of her husband; after the husband's death she is entitled to have her real estate exonerated out of the personal and real assets of the husband; the court considering her estate only as a surety for his debt.' This dictum has become generally recognized law, both in England and America."

A much later case (*Ricker* v. *Ricker*, 248 Mass. 549) refers to a statute like ours, forbidding contracts between husband and wife. In that case a wife signed a note with her husband for his accommodation. Upon maturity, her husband having failed to pay it, payment was demanded of her. She gave her own note in place of the joint note and later brought a suit in equity to compel her husband to pay the new note she had executed plus the items of interest she had paid on both the old and the new notes. In reversing the trial court, which had sustained a demurrer to the bill, the supreme court of Massachusetts said (pp. 550, 551): "Contracts between husband and wife are prohibited; G. L. c. 209, § 2; and a promissory note for money lent by the wife to the husband is void; *Gahm* v. *Gahm*, 243 Mass. 374, and cases cited. But rights arising during coverture may be enforced between parties who are no longer husband and wife, if they rest upon established principles of equity and not upon contract express or implied. It was decided in *Savage* v. *Winchester*, 15 Gray, 453, that a widow who had mortgaged her estate to secure her husband's debt, and had paid the debt since his decease, could prove her claim for the purpose of exonerating her estate before commissioners in insolvency. If the plaintiff signed the note, as alleged in her bill, for her husband's accommodation, she became a surety for him. *Guild* v. *Butler*, 127 Mass. 386, 389. * * * The property of the wife securing the debt of her husband is exonerated not by reason of any contract between them to that effect

but because of the rule, which gives to the surety the right of reimbursement against the principal. These decisions rest upon principles of equity and upon the law of suretyship which give the surety the right of reimbursement against the principal who is primarily liable. 'It is familiar law that when a surety pays a debt of his principal he is entitled to be subrogated to the benefit of the securities deposited by the debtor with the creditor. This rule applies to a wife who has become surety for her husband as well as to others.' *Fitcher* v. *Griffiths,* 216 Mass. 174, 176."

For the foregoing reasons we think the amount in question was properly allowed.

The next assignment of error we will consider is number eight. This assignment relates to commissions that were allowed the administrator on the principal of the estate. It is provided in section 2544, R. L. 1925, as amended by Act 183, L. 1927, that at the close of the administration the administrator shall be allowed certain commissions upon the principal of the estate, "the amount of such principal for this purpose to be the appraised value of the estate as of the death of the decedent." The only estimate of the value of the principal assets was that placed upon them by the administrator. It is contended that the appraisement should have been made by disinterested persons appointed by the court and that the appraisement by the administrator, who was personally interested in the matter, was legally insufficient to justify the allowance of commissions.

There is no statutory requirement in this jurisdiction that appraisements of the property of a deceased person whose estate is under administration must be made by court appointees. In the absence of such a requirement it cannot be said that an appraisement made by the administrator is void. If the objecting heirs had considered the

estimate placed upon the assets too high they had the opportunity of contesting it. Not having done this they are in no position to challenge the allowance of commissions to the administrator.

It is also contended under this assignment that the commissions were incorrectly computed for the reason that the amount of a certain mortgage, executed by the decedent in his lifetime on property located in the City and County of Honolulu, had not been deducted from the appraisement value as is required by Act 216, L. 1931. We find that the value of the estate shown by the administrator's appraisement amounted to $77,785 and from this sum the amount of the mortgage in question was deducted from the appraised value. For the foregoing reasons we think this assignment is without merit.

We will next consider assignment of error number six. This assignment relates to certain traveling expenses incurred by the administrator amounting to $47. Of this amount the circuit judge disallowed $32.50 and allowed the balance of $14.50. As we observed in the earlier part of this opinion it is conceded by the administrator that the total amount should have been surcharged and that it was error not to have done so.

There are two other assignments of error, one relating to the right of the widow to appear in the proceeding and the other to the burden of proof. These assignments are so obviously without merit that we deem it unnecessary to discuss them.

A decree in conformity with this opinion will be signed upon presentation.

O. P. Soares for plaintiffs in error.

A. E. Jenkins and E. Vincent for defendants in error.