COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY, Plaintiff-Appellee,

v.

PACIFIC–PERU CONSTRUCTION CORP. and the Hawaii Corporation, Defendants-Appellants.

The HAWAII CORPORATION, Defendant, Third-Party Plaintiff-Appellant,

v.

AMERICAN INTERNATIONAL UNDERWRITERS CORPORATION, Third-Party Defendant-Appellee.

No. 75–1790.

United States Court of Appeals, Ninth Circuit.

Aug. 10, 1977.

Terence J. O'Toole, Carlsmith, Carlsmith, Wichman & Case, Honolulu, Hawaii, argued, for defendants-appellants.

Peter G. Wheelon, Honolulu, Hawaii, argued, for plaintiff-appellee.

Before ELY, HUFSTEDLER and WRIGHT, Circuit Judges.

HUFSTEDLER, Circuit Judge:

Commercial Insurance Company of Newark, N. J. ("CIC"), a New Jersey corporation, obtained a summary judgment in its favor requiring Pacific-Peru Construction Corp. ("Pacific-Peru"), a Nevada corporation, and The Hawaii Corporation ("HC"),[1] a Hawaii corporation, to indemnify CIC pursuant to bonding, indemnity, and reinsurance contracts executed in connection with construction work performed in Peru. Federal jurisdiction was grounded on diversity. The district court granted summary judgment on two grounds: (1) CIC was entitled to indemnification because its right thereto was based on Peruvian judgments, the validity of which the district court could not go behind; and (2) a clause in the indemnity agreement requiring Pacific-Peru to deposit collateral security upon demand was specifically enforceable. We affirm the district court, applying contract principles, without reaching the question whether the Peruvian judgments were valid.

In 1966, Pacific-Peru entered a contract to build a public housing project in Peru for Asociacion Nacional Pro Vivienda Propriata De Los Servidores del Estado ("VIPSE"), a Peruvian organization of government employees. Pacific-Peru's construction contract with VIPSE required Pacific-Peru to obtain a construction bond in VIPSE's favor. Accordingly, Pacific-Peru signed a bonding agreement with El Pacifico Compania De Seguros Y Reaseguros ("El Pacifico"), as surety. El Pacifico is a Peruvian corporation, twenty percent of which is owned by an affiliate of American International Underwriters, Inc. ("AIU"). AIU, a New York corporation, was El Pacifico's foreign manager on the bond as well as CIC's agent. El Pacifico, in turn, required Pacific Construction, HC's predecessor and parent company of Pacific-Peru (hereinafter also referred to as "Pacific-Peru"), to sign an agreement promising to indemnify

---

1. Pacific-Peru is a wholly-owned subsidiary of HC. HC is a successor, by a June 1971 merger, to the Pacific Construction Company, Ltd. ("Pacific Construction"). At the time of the contracts in question, Pacific-Peru was a subsidiary of Pacific Construction.

El Pacifico if El Pacifico became liable on the construction bond. El Pacifico then entered into a contract of reinsurance with CIC in which CIC agreed to reimburse El Pacifico for any liability El Pacifico incurred under the construction bond with Pacific-Peru.

From 1966 to 1969, Pacific-Peru substantially performed the construction contract and received progress payments for its work. A dispute arose between Pacific-Peru and VIPSE as to the monies still due appellant under the contract. After various settlement attempts had failed, the dispute went to arbitration in Peru pursuant to an arbitration clause in the construction contract. The arbitral tribunal found in favor of VIPSE after invalidating a wage escalation provision in the contract and concluding that there were construction defects in the project. The Supreme Court of Peru reversed the decision of the arbitral tribunal because it found that the tribunal had no jurisdiction to invalidate the wage escalation provision and because the award contained several "contradictions."

On remand to the same arbitral tribunal, Pacific-Peru challenged the tribunal for lack of impartiality. Appellants' challenge failed and once more, the tribunal found for VIPSE, although its award was approximately half that of its previous award. The Peruvian Supreme Court affirmed the award of the arbitral tribunal although it contained, according to appellants, the same contradictions and invalidated the same contract provision involved in the first award.

After Pacific-Peru refused to pay the award, and at VIPSE's request, a Peruvian judge attached El Pacifico's bond in spite of El Pacifico's argument that the bond did not cover the entire amount of the arbitral award. El Pacifico appealed the attachment order to the Superior Court of Peru which court affirmed the attachment award

and held that the bond covered the entire award.[2] El Pacifico then tried to appeal the decision of the Superior Court, but the Superior Court held that its decision was not appealable. El Pacifico did not appeal the denial of the appeal to the Peruvian Supreme Court although appellants contend that Peruvian procedure would have permitted the appeal.

On January 28, 1974, a Peruvian judge ordered El Pacifico to pay the award promptly, in absence of which liability would be doubled. El Pacifico complied with the Peruvian judge's order and on February 11, 1974, CIC, pursuant to its reinsurance agreement, reimbursed El Pacifico for the amount of the award.

CIC then filed this diversity action in the district court in Hawaii seeking indemnification from Pacific-Peru under the indemnity agreements and the reinsurance contract. HC filed a third-party complaint against AIU, alleging that AIU wrongfully caused El Pacifico to pay VIPSE the amount of the arbitral award.[3] The district court dismissed HC's complaint for lack of personal jurisdiction.

The principal burden of the appellants' argument on appeal is that the district court erred in recognizing the Peruvian judgments. They argue that the Peruvian judgments were invalid because they were rendered by biased tribunals; they were not final because El Pacifico failed to take an appeal from the decision denying its appeal from the attachment order; the Peruvian award violated United States' public policy in prejudicing a United States national; the Peruvian trial was unfair; and because Peru does not extend full reciprocity to American judgments. Appellants further contend that since the Peruvian judgments were invalid, El Pacifico suffered no "actual liability" under its surety bond, but was merely a volunteer. Accordingly, they argue, neither El Pacifico nor its successor was entitled to indemnification.

---

2. Appellants argue in their brief that the Superior Court's ruling did not pass on the coverage of the bond. The record does not support appellants' assertion.

3. The nature of HC's claim against AIU is not altogether clear. Contrary to HC's allegation in its complaint, HC's brief avers that AIU improperly caused CIC to make payments to El Pacifico.

We have no occasion to make an exotic excursion into the law of Peruvian judgments. Assuming, *arguendo*, that the district court should not have accepted the Peruvian judgments at face value (*see Hilton v. Guyot* (1895) 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95; Restatement (Second) of Conflicts of Laws § 98 (1971); *British Midland Airways Ltd. v. International Travel, Inc.* (9th Cir. 1974) 497 F.2d 869, 871), that fact does not provide a defense to CIC's right to indemnification. The indemnification right, rather, turns on the interpretation of the contracts signed between El Pacifico and Pacific-Peru. CIC's right is firmly grounded on these contracts, and summary judgment was proper.

 First, we look to Hawaii's conflicts of laws rules to determine what law governs our interpretation of the bond and indemnity agreements. (*See Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.* (1941) 313 U.S. 487, 62 S.Ct. 1284, 86 L.Ed. 1757.) Hawaiian law does not provide an appropriate conflicts rule; accordingly, we apply general choice of law principles to determine which state's law governs our process of contract interpretation. (*See Dashiell v. Keauhou-Kona Co.* (9th Cir. 1973) 487 F.2d 957, 960 (Absent Hawaii law, the Restatement (Second) on Conflicts of Laws provides guidance as to general conflicts principles.).) Under Section 188 of the Restatement (Second) of Conflicts of Laws (1971), "the local law of the state which . . . has the most significant relationship to the transaction" applies to questions of contract interpretation absent an effective choice of law by the parties. Section 188(2) states the criteria in determining the significance of the relationship: (1) the place of contracting, negotiating, and performance of the contract; (2) the location of the subject matter of the contract; and (3) the domicile, nationality, place of incorporation, and place of business of the parties. The contacts in this case point to the application of either Hawaiian

or Peruvian law. HC, Pacific-Peru's parent corporation and third-party plaintiff, is a Hawaiian corporation; the bond and indemnity agreements were executed in Hawaii; CIC and AIU are United States corporations; El Pacifico is a Peruvian corporation; VIPSE's construction project is located in Peru; and El Pacifico performed on its bond pursuant to a Peruvian judgment. None of the parties has indicated that any state's or nation's law other than Hawaii's is applicable to this case.

 We choose to apply the law of Hawaii. None of the parties, pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, gave written notice of an intent to raise an issue concerning the law of a foreign country. We are, therefore, under no obligation to attempt to apply Peruvian law. (*See Bartsch v. Metro-Goldwyn-Mayer Inc.* (2d Cir. 1968) 391 F.2d 150, 155, n.3; 5 Moore's Federal Practice ¶ 44.1.03, p. 1655 (2d ed. 1977).) We apply the principle of the Restatement (Second) of Conflicts: "[W]here either no information, or else insufficient information, has been obtained about the foreign law, the forum will usually decide the case in accordance with its own local law . . . .. The forum will usually apply its own local law for the reason that in this way it can best do justice to the parties . . . .. When both parties have failed to prove the foreign law, the forum may say that the parties have acquiesced in the application of the local law of the forum. . . ." (Restatement (Second) of Conflicts of Laws § 136, comment h, at pp. 378–79 (1971); *id.* at § 6(2)(g), p. 10.)

As reinsurer of El Pacifico's surety obligations, CIC's claim is derivative from El Pacifico's right to indemnification from Pacific-Peru. Thus, two questions of contract interpretation require our attention: Would El Pacifico have been entitled to indemnification under the indemnity agreement?[4] If so, under what theory may CIC benefit from El Pacifico's right to indemnification,

---

4. We discuss El Pacifico's right to indemnification merely to lay the foundation for CIC's claims. We express no opinion as to whether

El Pacifico has a present right to indemnification from Pacific-Peru.

and what, if any, defenses does Pacific-Peru have against CIC's recovery?

Clause 2 of the indemnity agreement provides that El Pacifico shall be indemnified by Pacific-Peru for:

"all liability, losses, costs, damages, attorneys' . . . fees, . . . and expenses of whatever kind or nature which the Surety may sustain or incur by reason or in consequence of having executed . . . such bond . . .; [and Pacific-Peru agrees] to . . . make good to the Surety, its successors or assigns, all money which the Surety or its representatives shall pay; or cause to be paid or become liable to pay, by reason of the execution of such bond . . .."

The language of the indemnification agreement plainly embraces the payment which was actually made to discharge the obligation incurred under the Peruvian judgments. Appellants' arguments based on the validity of the Peruvian judgments miss the mark. To be sure, equity generally implies a right to indemnification in favor of a surety only when the surety pays off a debt for which his principal is liable. (*E. g., see* A. Stearns, The Law of Suretyship §§ 11.35, 11.41 (5th ed. J. Elder 1951).) However, resort to implied indemnity principles is improper when an express indemnification contract exists. (*See id.* at § 11.36, p. 509.) "There can be no question but that a surety is entitled to stand upon the letter of his contract, and his undertaking is to be construed strictly in his favor and is not to be extended by implication or inference beyond the bare scope of its terms." (*Hackfeld and Co., Ltd. v. Medcalf* (1910) 20 Haw. 47, 54. *Accord: The Territory of Hawaii v. Howell* (1917) 23 Haw. 797, 800; *Southern Pacific Co. v. Morrison-Knudsen Co.* (1959) 216 Or. 398, 338 P.2d 665, 670; *Northern Pacific Ry. v. Herman* (9th Cir. 1973) 478 F.2d 1167, 1170, n.4; *Markley v. Beagle* (1967) 66 Cal.2d 951, 59 Cal.Rptr. 809, 429 P.2d 129, 136.)

Clause 2 of the indemnity agreement quoted above does not limit Pacific-Peru's liability for indemnification to losses incurred by El Pacifico based upon a foreign judgment enforceable in the United States. The broad terms of the clause provide indemnification for any loss suffered by El Pacifico by "reason . . . of having executed" the performance bond. Even a miserly interpretation of this clause would require indemnification of El Pacifico for losses incurred by reason of a court order compelling El Pacifico to perform on its surety bond or risk double liability. Furthermore, we have no basis to assume that the parties entering the bond and the indemnity agreements were unaware that a Peruvian tribunal might be required to settle disputes arising out of the construction contract to be performed in Peru. Resort by Peruvian corporations to the courts of Peru must have been within the contemplation of the parties at the time the bargains were struck. Post-judgment regret about the bargain that was made is no foundation for relieving the appellants of the obligations they freely assumed under the contracts they executed.

Once El Pacifico's right to indemnification under the agreement has been established, CIC is entitled to recover as a third-party beneficiary of that agreement. The applicable principle is stated in the Restatement (Second) of the Law of Contracts § 133 (Tent. Draft No. 4, 1968):

"[A beneficiary of an agreement is an intended third-party beneficiary] if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . (b) the promise manifests an intention to give the beneficiary the benefit of the promised performance."

The intent of both El Pacifico and Pacific-Peru to indemnify a reinsurer of El Pacifico's surety obligation for losses incurred under the performance bond is clear from the very words of the indemnity agreement:

"this instrument shall protect, in the name of the Surety, any and all surety or reinsuring companies that may assume reinsurance . . . on any such bond . . . and, in like manner, shall indemnify such other reinsurer . . ., it

being agreed that this instrument shall inure to the benefit of any such reinsurer . . . , so as to give it or them the right of action hereunder." (Clause 8)

Comment *d* to Section 133, *id.* at p. 10, further refines the identification of a third-party beneficiary: "[I]f the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him, he is an intended beneficiary."

■ We do not expand anyone's concept of reasonableness by assuming that CIC, in reinsuring El Pacifico, relied on the indemnity provisions of clause 8 for indemnification in the event it became liable to El Pacifico under the reinsurance agreement. Nor is CIC deprived of its third-party beneficiary status because its identity as reinsurer was unknown at the time the indemnity agreement was executed. As long as CIC was identifiable as a third-party beneficiary at the time of performance of the indemnity agreement, CIC may enforce the terms of the agreement. (*See* Restatement of the Law of Contracts § 139 (1932); J. Calamari and J. Perillo, The Law of Contracts § 251, p. 397 (1970).)

■ CIC's status as third-party beneficiary also robs Pacific-Peru of the defenses it attempts to assert against CIC. Appellants argue that CIC is not entitled to indemnification because a "final judgment [against El Pacifico] of a competent court" was necessary before CIC became liable under its reinsurance contract. As invalid judgments, the Peruvian judgments were not "final judgments of a competent court." Because CIC failed to raise this defense when it reimbursed El Pacifico, appellants argue that CIC waived its right to indemnification or did not suffer "actual liability"

entitling it to indemnification from Pacific-Peru. Pacific-Peru, as promisor on the indemnity agreement, cannot deprive CIC, as third-party beneficiary of the indemnity agreement, of indemnification by raising defenses that CIC may have had against El Pacifico under CIC's reinsurance contract. As promisor, Pacific-Peru is limited to the defenses it has against El Pacifico, the promisee; and, as discussed earlier, Pacific-Peru would have been unsuccessful in defending an indemnification suit brought by El Pacifico. (*See id.* at § 250.)

■ Appellants attempt to take advantage of the rule that an indemnitee who settles the claim on which he bases his right to indemnification is under a duty to settle the claim in good faith. They allege that CIC's failure to raise defenses based on the terms of the reinsurance agreement acted as a bad faith settlement of CIC's liability to El Pacifico. Assuming that the facts support appellants' argument, appellants are barred from raising it. Appellants, as promisors, may not raise a third-party beneficiary's defense to an obligation the beneficiary has to the promisee.

■ The district court's specific enforcement of the collateral security provisions in clause 10 of the bond agreement and clause 3 of the indemnity agreement was erroneous.[5] CIC had an adequate remedy at law, and specific performance was therefore not available. (*See, e. g., Scott v. Pilipo* (1915) 22 Haw. 412, 413–14, *appeal dismissed* (1915) 239 U.S. 659, 36 S.Ct. 283, 60 L.Ed. 489.) CIC may sue, as it has here, for money damages for breach of the indemnity clause in the indemnity agreement. (*See* J. Pomeroy, Specific Performance of Con-

5. These clauses are virtually identical and provide that:

"[i]f for any reason the Surety shall be required or shall deem it necessary to set up a reserve . . . to cover any contingent claim . . . loss . . . and expenses in connection with any bond by reason of default of the Principal . . . or for any reason whatsoever, and regardless of any proceedings contemplated or taken by the Principal or the pendency of any appeal, the undersigned . . . agree immediately upon demand to deposit with the Surety

. . . an amount sufficient to cover such reserve and any increase thereof, such funds to be held by the Surety as collateral, in addition to the indemnity afforded by this intrustment, with the right to use such funds . . . at any time in payment . . . of any judgment, claims, liability, loss, damage, . . . or other expenses[.]" (Clause 3)

CIC argued that it was a third-party beneficiary of these collateral security provisions as well as of the indemnification clauses.

tracts § 16, pp. 44–46 (1926).) There is nothing uncertain about the liability that El Pacifico or CIC incurred under their respective surety and reinsurance agreements. The sum was made certain by a Peruvian judgment; and the amount of interest can be determined by simple mathematical computations. Under these circumstances, no resort to equitable remedies is necessary to protect appellee and specific performance is unavailable. (*See, e. g., Milwaukee Construction Co. v. Glen Falls Insurance Co.* (9th Cir. 1966) 367 F.2d 964, 966; *United Bonding Insurance Company v. Stein* (E.D. Pa.1967) 273 F.Supp. 929; *National Surety Corp. v. Titan Construction Corp.* (Sup.Ct. 1940) 26 N.Y.S.2d 227; *affirmed* (1940) 260 App.Div. 911, 24 N.Y.S.2d 141; *Standard Surety & Casualty Co. of New York v. Caravel Industries Corp.* (1940) 128 N.J.Eq. 104, ·15 A.2d 258.)

▪ We also affirm the district court's dismissal of HC's third-party complaint against AIU for lack of personal jurisdiction. Hawaii's long-arm statute provides for personal jurisdiction when a person transacts "any business within this State" or commits a "tortious act" within Hawaii. (*See* Section 634–35, Haw.Rev.Stat. (Supp. 1975).) Whether one alleges jurisdiction under the transacting business or committing a tortious act clause of the statute, Hawaii requires that the cause of action relate to defendant's contacts in Hawaii. (*See Hawaii Credit Card Corp. v. Continental Credit Card Corp.* (D.Hawaii 1968) 290 F.Supp. 848, 851 ("Similar to McGee . . the totality of the preceding facts indicate that the activities of the defendants were precisely the activities which the franchise agreements were intended to bring about in Hawaii, and the defendants are therefore doing their business in this state even though the business may be done . . . by mail . . .. Defendants' activities all related directly to the cause of action . . ., the consummation of its transactions, out of which the present suit has arisen, took place in Hawaii, and the taking of jurisdiction by this Court . . . is not inconsistent with due process.").

▪ The parties agree that the following constitutes the sum total of AIU's contacts with Hawaii:

(1) AIU's attorney came to Hawaii on behalf of CIC to collect the collateral security from appellants under the bond and indemnity agreements; and

(2) AIU's attorneys sent letters to appellants in an attempt to collect monies due El Pacifico under the bond and indemnity agreements.

Whether HC bases its cause of action on AIU's responsibility for causing CIC to reimburse El Pacifico or for causing El Pacifico to pay VIPSE (*see* note 3, *supra*), HC made no showing before the district court as to how these causes of action relate to AIU's contacts with Hawaii. The district court properly found that HC, as proponent of jurisdiction, had not satisfied its burden of proving that the court had personal jurisdiction over AIU under Hawaii's long-arm statute. (*See Chem Lab Products, Inc. v. Stepanek* (9th Cir. 1977) 554 F.2d 371, 372 (". . . The burden was then upon Chem Lab to establish the jurisdictional facts. The mere allegations of a complaint, when contradicted by affidavits, are not enough to confer personal jurisdiction over a nonresident defendant.").)

Accordingly, summary judgment in the main action and dismissal of the complaint in the third-party action is

AFFIRMED.