**RANDOLPH ENGINEERING COMPANY, a corporation, Plaintiff,**

v.

**FREDENHAGEN KOMMANDIT–GESELLSCHAFT, Defendant.**

**Civ. A. No. 78–870.**

United States District Court, W. D. Pennsylvania.

Sept. 28, 1979.

**1356**

J. Frank McKenna, III, Thorp, Reed & Armstrong, Pittsburgh, Pa., for plaintiff.

Thomas G. Kienbaum, Michael B. W. Sinclair, Dicksinson, Wright, McKean, Cudlip & Moon, Detroit, Mich., for defendant.

## MEMORANDUM ORDER

COHILL, District Judge.

Randolph Engineering Company ("Randolph") brought a diversity action in the Western District of Pennsylvania against Fredenhagen Kommandit-Gesellschaft ("Fredenhagen") for damages allegedly arising from Fredenhagen's breach of a contract entered into by the two parties in May, 1977. The contract involved the construction of a conveyor paint line at a Volkswagen assembly plant located in the Western District of Pennsylvania. In early 1977, Volkswagen Manufacturing of America ("VWMOA"), then a Pennsylvania corporation, selected Conveyor Engineering Company, Inc. ("Conveyor") of Michigan as the prime contractor for the installation of material handling equipment at the assembly plant. VWMOA has since merged with

Volkswagen of America, Inc., the latter having its headquarters in Michigan. Conveyor subsequently subcontracted with Fredenhagen, a West German limited partnership. Fredenhagen, in turn, subcontracted with Randolph, a Pennsylvania corporation with offices located in the Western District of Pennsylvania, to install equipment supplied by Fredenhagen. The contract entered into by Randolph and Fredenhagen incorporated several provisions of the contract between VWMOA and Conveyor, including Paragraph 25, entitled "Applicable Law."[1]

Randolph filed its complaint against Fredenhagen on August 9, 1978. The defendant responded on November 17, 1978 with a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b). That motion included challenges based on subject matter jurisdiction, personal jurisdiction, venue and failure to state a claim upon which relief can be granted. The defendant's challenge to venue arose primarily from Paragraph 8 of the Randolph-Fredenhagen contract, which provides: "Place of performance as regards delivery and payment as well as place of jurisdiction for both parties shall be Offenbach on the Main." In a Memorandum Order issued on May 15, 1979, this Court denied the defendant's motion to dismiss. On the issue of venue, we held that the defendant's failure to translate Paragraph 8 into English following a request from Randolph to provide a translation of the purchase order resulted in the exclusion of Paragraph 8 from the operative contract. Furthermore, we found that the parties had intended that the VWMOA–Conveyor provision, rather than Paragraph 8, control the issue of a forum for litigation. Finally, we determined that the VWMOA–Conveyor provision did not establish West Germany as the appropriate forum.

Fredenhagen filed an answer and a compulsory counterclaim on May 25, 1979. The third defense asserted in the answer resurrected the argument, which this Court had rejected in its Order of May 15, 1979, that Paragraph 8 of the contract required that the plaintiff bring any litigation only in the courts of West Germany. Randolph replied to the counterclaim on June 6, 1979.

Two days after the plaintiff filed its reply, Fredenhagen made a motion to dismiss on the ground of improper venue, alleging that Paragraph 25 of the VWMOA–Conveyor contract required that Randolph bring its action in Michigan. In the alternative, the defendant moved this Court to transfer the case to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a) (1976). Randolph has opposed these motions, and has requested that this Court order the defendant to pay the plaintiff's attorneys' fees for responding to the motions.

After carefully reviewing the parties' briefs and hearing oral arguments, we will deny the defendant's motion to dismiss, the defendant's motion for transfer, and the plaintiff's motion for an award of attorneys' fees.

### Motion to Dismiss

■ The defendant now asserts that the choice of forum provision in the VWMOA–Conveyor contract controls any dispute arising between Randolph and Fredenhagen, and that the provision makes Michigan the proper forum. Although the defendant's present interpretation of Paragraph 25 may have some merit, the Court need not decide that question. The defendant has waived its instant objection to venue by failing to assert the objection in the initial motion to dismiss filed on November 17, 1978. Federal Rule of Civil Procedure 12(h)(1) provides that a defense of improper venue is waived if omitted from a pre-answer motion made

1. Paragraph 25 reads in its entirety:

   Applicable Law—This order and any contract arising from this order, as well as all transactions contemplated hereby, shall be governed by and construed according to the laws of the State from which this order is issued and the courts of the State and the federal courts sitting in the State shall have jurisdiction in all actions arising with respect thereto. Any trade or commercial terms used in this order shall be interpreted in the light of the INCOTERMS 1953 of the International Chamber of Commerce.

pursuant to Federal Rule of Civil Procedure 12(b). This provision enforces Rule 12(g), which requires that a party who makes a pre-answer motion under Rule 12(b) include all defenses and objections then available to him that Rule 12(b) permits to be raised by motion. Thus, "if defendant exercises the option afforded by Rule 12(b) and raises certain defenses and objections by preliminary motion, he is bound by Rule 12(g). . . . The rule generally precludes a second motion based on any Rule 12 defense or objection that defendant could have but neglected to raise in his original motion." 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1385, at 838 (1969). The consolidation requirement seeks "to eliminate unnecessary delays at the pleading stage of a case by avoiding the piecemeal consideration of pretrial motions." *Rauch v. Day & Night Mfg. Corp.,* 576 F.2d 697, 701 (6th Cir. 1978) (footnote omitted).

Fredenhagen made a Rule 12(b) motion on November 17, 1978. Rule 12(h)(1) prohibits it from making a second such motion. The fact that both motions raise a defense based upon improper venue does not deactivate Rule 12(g) and Rule 12(h)(1). The policy concern underlying the consolidation requirement is violated whether the second motion raises a new Rule 12(b) defense or whether it raises a new theory supporting the original Rule 12(b) defense.

The defendant urges that Rule 12(h)(1) should not preclude its second motion because it did not know, prior to the Court's Order of May 15, 1979, that the Court would void Paragraph 8 of the contract and would find controlling Paragraph 25 of the VWMOA–Conveyor contract. Fredenhagen therefore argues that the Court should not penalize it for failing to allege in its original motion to dismiss the present objection based on Paragraph 25.

This Court's Order of May 15, 1979 brings into question defendant's present position that it could not have reasonably anticipated that the Court would hold controlling Volkswagen's intention through Paragraph 25. That Order states: "Randolph . . . asserts that the parties had agreed that the forum selected by Volkswagen in the terms and conditions of its orders would be the locus where disputes between Randolph and Fredenhagen would be considered. Fredenhagen appears to agree, but disagrees as to the meaning of the Volkswagen language." The defendant had asserted an interpretation of Paragraph 25 that would make West Germany the appropriate forum. In our Order, we found Fredenhagen's interpretation to be "strained, to say the least."

When Fredenhagen first argued the issue of venue, it knew that the Court probably would have to interpret Paragraph 25. It also knew that Randolph had urged an interpretation of Paragraph 25 that would make Pennsylvania the appropriate forum. Therefore, the defendant had adequate notice when it first challenged venue that it should assert all interpretations of Paragraph 25 that would render Pennsylvania an inappropriate forum. The defendant should have argued in the alternative, alleging that the contract required the parties to file any actions in the courts of either West Germany or Michigan, but definitely not Pennsylvania. *See* Fed.R.Civ.P. 8(e)(2). The Federal Rules do not allow a party to delay a case by asserting its arguments seriatim. "Once venue is waived, even by mistake of law, it may not be reasserted. . . . There may be circumstances where, by reason of fraudulent representations or misleading information furnished by a plaintiff, relaxation of the Rule would be justified. Such circumstances are not present here." *United Rubber, Cork, Linoleum and Plastic Workers of America, AFL–CIO, Local 102 v. Lee Rubber & Tire Corp.,* 269 F.Supp. 708, 713–14 (D.N.J.1967), aff'd, 394 F.2d 362, 364 (3d Cir.), *cert. denied,* 393 U.S. 835, 89 S.Ct. 108, 21 L.Ed.2d 105 (1968).

Even if the defendant did not waive its instant objection by failing to assert the objection in its motion to dismiss of November 17, 1978, it definitely waived the venue objection by failing to include that objection in its answer filed on May 25, 1979. Fredenhagen had the benefit of the Court's Memorandum Order ten days before it filed

the answer. Rule 12(h)(1) states that a defense of improper venue is waived "if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course." The defendant lost its opportunity to amend its answer as a matter of course when the plaintiff filed a reply to the counterclaim on June 6, 1979, and in any case the defendant failed to amend its answer within twenty days after service—the motion to dismiss filed on June 8, 1979 is not an amended answer.

The question of whether Randolph's earlier assertions would estop the plaintiff from arguing that Michigan is not the proper forum does not arise because the defendant can no longer raise an objection to venue.

*Motion to Transfer*

■ Fredenhagen has requested that this Court transfer the case to the Eastern District of Michigan. This Court has the power to order such a transfer pursuant to 28 U.S.C § 1404(a) (1976), which provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Movant first has the burden to show that the plaintiff properly could have initiated the action in the transferee district. In its motion, Fredenhagen alleges that the plaintiff could have filed its suit in the Eastern District of Michigan pursuant to Paragraph 25 of the VWMOA–Conveyor contract, which Randolph and Fredenhagen had incorporated into their contract. A contract provision that specifies a forum for litigation will be recognized unless the court determines that enforcement would be unreasonable under the circumstances. *See Central Contracting Co. v. Maryland Casualty Co.*, 367 F.2d 341, 344–45 (3d Cir. 1966). *Cf. Morse Electro Products Corp. v. S. S. Great Peace*, 437 F.Supp. 474, 487 (D.N.J. 1977) (parties free to choose venue for litigation of dispute arising from contract provided that jurisdiction chosen has some re-

lationship to parties or contract). Courts occasionally have refused to enforce such provisions. *See, e.g., Matthiessen v. National Trailer Convoy, Inc.*, 294 F.Supp. 1132, 1134–35 (D.Minn.1968); *Hawaii Credit Card Corp. v. Continental Credit Card Corp.*, 290 F.Supp. 848, 851–52 (D.Haw. 1968). *Hawaii Credit Card Corp.* involved a suit brought in the District of Hawaii by a Hawaii-based franchisee against a California-based franchisor for breach of the franchise agreement. The agreement explicitly provided that the parties could initiate legal action arising from the contract only in the courts of California. The district court found that the forum selection provision was unreasonable "where apparently the target of defendants' agreements and actions was the credit card business of Hawaii, where many witnesses are residents of Hawaii and most of the evidence as to the acts complained of apparently is to be found in Hawaii." 290 F.Supp. at 851–52. More recently, a district judge in *Leasewell, Ltd. v. Jake Shelton Ford, Inc.*, 423 F.Supp. 1011 (S.D.W.V.1976), refused to recognize a forum selection provision that specified that any litigation arising from the contract between a New York-based corporation and a West Virginia-based corporation had to be filed in the courts of New York. In determining that the forum selection provision was unreasonable, the judge examined the following factors: the law that governs the formation and construction of the contract; the residence of the parties; the place of execution and/or performance of the contract; the location of the parties and witnesses probably involved in the litigation; the inconvenience to the parties; and the bargaining power of the parties. 423 F.Supp. at 1015–16.

■ Applying the analysis of these decisions to the instant case, we find that enforcement of the forum selection provision would be unreasonable. First, the language of Paragraph 25 is ambiguous; it does not explicitly identify any jurisdiction. In its first motion to dismiss, Fredenhagen argued that West Germany was the only proper forum under Paragraph 25. Second, Michigan—assuming that Paragraph 25 in-

tended that Michigan serve as the forum— has only the most tenuous connection with this law suit. Neither party is incorporated or has offices in Michigan. Fredenhagen does have a subsidiary (unrelated to the present action) and legal counsel in Michigan. The contract arose from communication between West Germany and Pennsylvania, and involved work to be performed at a Pennsylvania job site. Logic suggests that most witnesses and evidence are located at Randolph's offices in Pennsylvania, Fredenhagen's offices in West Germany and Volkswagen's Pennsylvania facility. Although Fredenhagen might find it more convenient to litigate in Michigan because of the presence there of a subsidiary and legal counsel, Randolph would suffer substantial inconvenience if it had to transport witnesses, evidence and legal counsel to Michigan.[2]

■ Even assuming, however, that Paragraph 25 made Michigan a proper original forum, this Court still would refuse to transfer the case. Movant must show that considerations of convenience strongly favor the transferee district. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). Fredenhagen has failed to carry this burden.

Contrary to the defendant's contention, the plaintiff has not waived its interest in the Western District of Pennsylvania by

arguing earlier that jurisdiction and venue should be determined under Paragraph 25. The plaintiff filed the action in the Western District of Pennsylvania and has maintained throughout that the action should remain in this district; it apparently feels that litigation in the Western District of Pennsylvania is consistent with the contract provision. In any case, Randolph argued for the applicability of Paragraph 25 on the issue of venue—an issue already decided by this Court and not now properly before this Court.

Fredenhagen's brief in support of its motion makes only general statements regarding the relative convenience of the Eastern District of Michigan. For example, the brief states: "It is obvious that most of the witnesses necessary to try this case are located in Michigan where they would be subject to service of process . . . ." Brief for Defendant at 6. The defendant made no effort to compile a list of specific witnesses and documents. Such general statements fail to satisfy the defendant's heavy burden on the issue of convenience.

Looking beyond Fredenhagen's submissions to the facts of the case, this Court has difficulty understanding why most witnesses and documents would reside in Michigan. The action is between a Pennsylvania corporation and a West German limited partnership for breach of a contract involving work to be done on a project in the Western

---

**2.** The Eastern District of Michigan could become a proper original forum only through the application of Paragraph 25. Without that contract provision, the plaintiff could not obtain personal jurisdiction over the defendant in Michigan. The Michigan long-arm statute would recognize sufficient nexus if the law suit arose from the transaction of any business in Michigan or from a contract that provided that the defendant would furnish services or materials in the state. Mich.Comp.Laws.Ann. § 600.-705 (West Supp.1968–79). The instant case satisfies neither of these tests, however. VWMOA and Conveyor provide the only ties with Michigan, and neither company is a party to the contract now in litigation.

Venue likewise becomes a problem without Paragraph 25. When subject matter jurisdiction rests on diversity of citizenship, 28 U.S.C. § 1391(a) controls venue. That statute provides: "A civil action wherein jurisdiction is

founded only on diversity of citizenship may . . . be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." Neither Randolph nor Fredenhagen resides in Michigan; Fredenhagen's subsidiary that now does business in Michigan has no relationship with this litigation. A claim arises in a judicial district when, in comparison with other possible fora, the most significant contacts underlying the cause of action occur in that district. *See B. J. McAdams, Inc. v. Boggs*, 426 F.Supp. 1091, 1103 (E.D.Pa.1977). In comparison to the Western District of Pennsylvania, the Eastern District of Michigan has very few contacts with this cause of action.

The personal jurisdiction and venue deficiencies that surface in the absence of Paragraph 25 underscore the unreasonableness of Michigan as a forum for the instant action.

District of Pennsylvania. The employees of the plaintiff live in the Western District of Pennsylvania, most employees of the defendant live in Germany, and evidence of the contract and damages[3] should be present primarily in the Western District of Pennsylvania.

The contract arose, according to the Vice President of Randolph, from correspondence between Pennsylvania and West Germany and from a meeting in Pittsburgh between representatives of the two companies. Affidavit of Robert L. Shaw at 3–6. Randolph's vice president noted that most Volkswagen personnel who might be witnesses are still working at the Pennsylvania facility. Id. at 8. He also stated that two Conveyor employees who might be called as witnesses are believed to reside in Detroit. Id. at 8–9. The presence of two potential witnesses in Detroit, however, does not support the proposition that justice demands a transfer to the Eastern District of Michigan for the convenience of the parties and the witnesses.

Robert T. Herivel, an employee of Conveyor who works in Detroit, submitted an affidavit in this case, but it seems unlikely from the nature of his affidavit that either party would call him as a witness on the merits. The necessity for this Court to engage in such speculation, however, is itself determinative on the disposition of the defendant's motion. Fredenhagen apparently wants the case transferred to the Eastern District of Michigan because it has a subsidiary and legal counsel in Detroit, but it failed to make any specific showing that the interest of justice would be served by such a transfer. In light of this failure, this Court must find that the defendant did not satisfy its heavy burden of establishing that considerations of convenience strongly favor the Eastern District of Michigan.

*Motion for Award of Attorneys' Fees*

■ The plaintiff, alleging that Fredenhagen made its motions solely for the purpose of delay, has moved this Court to order the defendant to pay the plaintiff's attorneys' fees associated with responding to these motions. A district judge does have the power to award attorneys' fees on equitable grounds, if a party to litigation acts vexatiously, oppressively or in bad faith. *See Alyeska Pipeline Serv. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Skehen v. Board of Trustees of Bloomsburg St. College,* 538 F.2d 53, 57 (3d Cir.), *cert. denied,* 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976).

This power must be exerted sparingly, however. The First Circuit in *Cordeco Development Corp. v. Santiago Vasquez,* 539 F.2d 256 (1st Cir.), *cert. denied,* 429 U.S. 978, 97 S.Ct. 488, 50 L.Ed.2d 586 (1976), stated: "Whatever the parameters of the 'bad faith' exception, fees should be awarded under its authority only in extraordinary circumstances and for dominating reasons of justice." 539 F.2d at 263 (citations omitted). In a subsequent case, *Americana Industries, Inc. v. Wometco de Puerto Rico, Inc.,* 556 F.2d 625 (1st Cir. 1977), the same circuit held: "Invocation of the bad faith exception to the normal federal rule that attorney's fees may not be recovered requires more than a showing of a weak or legally inadequate case. Doubtless a case can be so frivolous as to reflect impermissible conduct, but we cannot say that the issue is that plain here." *Id.* at 628.

■ Courts interpret the bad faith exception narrowly because they do not want to chill a lawyer's efforts on behalf of his client. After all, Canon 7 of the *ABA Code of Professional Responsibility* states that "A Lawyer Should Represent A Client Zealously Within The Bounds Of The Law." Although this Court believes that the defendant's motions lack merit, they are not

---

**3.** The plaintiff alleges in its complaint that it suffered damage when the defendant failed to deliver certain equipment to the Pennsylvania jobsite in a timely fashion and failed to deliver the equipment in the proper sequence. Randolph further alleges that as a result of these breaches of the contract it incurred extra costs for additional labor and supervision required after the scheduled delivery dates, additional field overhead costs, and direct costs resulting from inefficiency.

vexatious or so frivolous that it can be said that Fredenhagen asserted the motions in bad faith. The defendant did offer reasons to support its position, and the question of a proper forum in this case is complex.

AND NOW, to-wit, this 28th day of September, 1979, it is ORDERED, ADJUDGED and DECREED that the defendant's motion to dismiss is denied, the defendant's motion to transfer is denied, and the plaintiff's motion for an award of attorneys' fees is denied.