**HAWAII CREDIT CARD CORPORA-
TION, Plaintiff,**

v.

**CONTINENTAL CREDIT CARD CORPO-
RATION and Universal Credit Ac-
ceptance Corp., Defendants.**

**Civ. No. 2825.**

United States District Court
D. Hawaii.

Sept. 20, 1968.

H. William Burgess and T. Irving Chang, Honolulu, Hawaii, for plaintiff.

Richard E. Stifel, of Anderson, Wrenn & Jenks, Honolulu, Hawaii, for defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS

PENCE, Chief Judge.

Plaintiff, a Hawaiian corporation, has filed its complaint against defendant California corporations in the nature of a diversity action, alleging in substance that in December 1966, defendants gave plaintiff's predecessor and assignor a territory franchise agreement for exclusive membership sales rights for the credit card program of defendant Continental Credit Card Corporation (Continental), the alter ego of defendant Universal Credit Acceptance Corp. (Universal), in the State of Hawaii and that after plaintiff had fulfilled its obligations thereunder, on December 28, 1967 defendants breached that franchise agreement by granting to Protecto Public Relations Co. (Protecto), a California corporation, a similar franchise agreement which also included the State of Hawaii, and thereafter accepted the business engendered by Protecto, refused to honor business engendered by the plaintiff, and otherwise failed to carry out the terms of the franchise agreement, whereby losses of expenses and anticipated profits totaling some $63,000 in damages resulted.

Plaintiff attempted service upon the defendants in accordance with the provisions of the State of Hawaii's "long-arm" statute, viz., by service upon the Deputy Director of the Department of Regulatory Agencies of the State of Hawaii, and twice mailing of a certified copy of the complaint, summons and notification of service by registered mail addressed to the defendants' offices in California. Such registered letters were returned "Refused". Other copies of the complaint, summons, etc., were attempted to be served by both registered mail and first class mail, all of which were returned "Refused" by the defendants.

That defendants, however, were not unaware of the suit is indicated by the fact that one Frederick Mahan in May of 1968 requested an extension of time in which to plead to the complaint.

On June 18, 1968, defendants filed a motion (1) to quash the return of summons under Rule 12(b) (5), F.R.Civ.P., on the ground that the defendants had not been properly served with process, (2) to dismiss the action under Rule 12 (b) (2), F.R.Civ.P., or on the alternate ground that the defendants, as California corporations, are not subject to service of process within the District of Hawaii, i. e., that venue is absent, and (3) to dismiss the action under Rule 12(b) (3), F. R.Civ.P., because by the specific wording of the franchise agreement the parties agreed to exclusive venue of the State of California in the event any action was brought because of alleged breach of the franchise agreement.

1. The affidavit of H. William Burgess, attorney for the plaintiff, clearly and uncontradictedly sets forth that he complied with the provisions regarding service of Hawaii's "long-arm" statute, §§ 230–33 and 230–41.5, R.L.H.1955, but by their deliberate acts of refusing to accept the registered and other letters, defendants avoided actual service. It is undenied that the vice-president of Continental and the president of Universal knew as early as March 1968 that the present suit would be brought and that the defendant had actual knowledge of the complaint that was ultimately filed in this case. On the first ground, therefore, defendants' motion to dismiss is not well taken.

2. Defendant Universal urges that it has had no contacts whatsoever with Hawaii; that it does not maintain offices

in Hawaii, is not listed in the telephone directory in Hawaii, has no employees, no warehouses nor offices in Hawaii; "that it has no gross receipt whatsoever from Hawaii; that prior to the cancellation of the plaintiff's contract the gross receipts from Hawaii were negligible." Defendant Continental urges that while it did execute "a Master Territory Franchise Agreement" (for the State of Hawaii) with the plaintiff, in California, all the supplies and service facilities of Continental are located in California and that it shipped such from California in connection with the franchise; that the corporation does not maintain any offices, has no employees nor warehouses, is not listed in the telephone directory in Hawaii; and that all contracts negotiated by the plaintiff under the franchise agreement are sent to California for acceptance and approval; that Continental has no franchises or members of any kind in Hawaii as of June 7, 1968; that no corporate officers were ever in Hawaii to negotiate the original contract or assist in the carrying out of the franchise agreement.

Contra to the affidavits of the officers of Continental and Universal, plaintiff's Exhibits B–F indicate that on two occasions in May Universal attempted, by mail, to collect credit card accounts from two subscribers in Hawaii and inferentially, clearly invoked the threat of using the legal system of the State of Hawaii in the collection attempt. Also, the exhibits indicate that in 1966 and 1968 Continental attempted to interest another party in Hawaii in securing a franchise for the State of Hawaii for its "all Credit Card" program. The exhibits further indicate that the plaintiff, in accordance with its franchise with Continental, during the franchise period, sold membership in its " 'all Credit Card' program to merchants in the State of Hawaii", and thereafter sent the membership payments to Continental; that it received parcels of "supplies, sales kits, advertising gimmicks,

direct mail pieces and membership contract forms" as well as checks for commissions for sales of membership contracts from Continental during the relevant period. Exhibit F, the membership application, clearly indicated a two-way movement of money and credit between Continental in California and members of its plan in Hawaii. Paragraphs 10, 11, 12 and 13 of the membership agreement positively indicate that Continental controlled the rules and regulations by which a member could operate Continental's plan in Hawaii and the methods and manner by which a member could continue to operate for Universal.

In addition to the above, it appears undenied that the defendants on December 28, 1967, granted to Protecto Public Relations Co. a Master Territory Franchise Agreement which included the State of Hawaii, and then through Protecto, membership rights in defendants' "all Credit Card" program were sold in Hawaii and Protecto's distributor in Hawaii was paid by defendants for those sales.

As this court has heretofore said, the only rule of law which is uniformly applicable to all cases involving venue is that the decision depends entirely upon the particular facts involved.[1]

An analysis of the above facts indicate that the defendants have conducted more than a minimal amount of activities within the State of Hawaii. While they may have no offices or employees in Hawaii, they nevertheless have purported to invoke the protection and powers of the laws of Hawaii by their letters of collection to alleged debtors here; from California they have controlled many facets of the operation of both the franchise holders and their members here. The entire thrust and aim of their franchise agreements and the changes in territorial franchise authority were directed at the Hawaiian market and were calculated to bring about in Hawaii the controversies which resulted in the instant lawsuit.[2]

1. Courtesy Chevrolet, Inc. v. Tennessee Walking Horse Breeders' and Exhibitors' Ass'n, 344 F.2d 860, 863 (9 Cir. 1965).

2. Cf. Courtesy Chevrolet, Inc. v. Tennessee Walking Horse Breeders' and Exhibitors' Ass'n, supra; Mechanical Con-

While it is urged that the cause of action did not arise out of defendants' activities in the forum, such is not the fact in this case. It was the defendants' activities in setting up the franchise and member solicitation in Hawaii, and then setting up a competitor franchise operator in Hawaii which brought about the instant suit. Thus, even though the defendants operated in Hawaii by mail, they deliberately and intentionally brought about in Hawaii the very injuries of which plaintiff complains. The defendants' activities in setting up and implementing a new or competing (at this state of the record the court could not be positive which) franchise operation in Hawaii related directly to the cause or causes of action alleged in the complaint.

Similar to McGee v. International Life Ins. Co.,[3] the totality of the preceding facts indicate that the activities of the defendants were precisely the activities which the franchise agreements were intended to bring about in Hawaii, and the defendants are therefore doing their business in this state even though the business may be done almost exclusively by mail or through local members.[4] Defendants' activities all related directly to the cause of action alleged by the plaintiff, the consummation of its transactions, out of which the present suit has arisen, took place in Hawaii, and the taking of jurisdiction by this court on the basis of diversity and citizenship and by service of process as contemplated by the Hawaii statute is not inconsistent with due process. The contacts of the defendants with Hawaii make it reasonable to require the defendants to defend the present action brought here.[5]

The activities of the defendants in Hawaii more than satisfy the requirement that there be a "substantial minimum contact" here. The tenets of "fair play" and "substantial justice" will be met if the complaint is tried in this forum. The three tests of L. D. Reeder Contractors of Arizona v. Higgins Industries, Inc.[6] have been met, and venue is properly found in Hawaii.

3. Under the specific wording of the franchise agreement[7] between the parties here, in the event that suit were brought by either party venue was agreed to lie in California and for the purposes of interpretation that the laws of California should govern. This court recognizes the general principle that jurisdiction of the courts cannot with certainty be ousted by private agreement made in advance.[8]

This court, as did the Court of Appeals of the Second Circuit in Wm. H. Muller & Co. v. Swedish American Line Ltd.,[9] goes along with the principle enunciated by Chief Judge L. Hand in his concurring opinion in Krenger v. Pennsylvania R. Co.,[10] and holds that the enforceability of such a venue agreement as is involved here depends upon its reasonableness. Under the setting of this particular case where apparently the target of defendants' agreements and actions was the credit card business of Hawaii, where many witnesses are residents of Hawaii and most of the evidence as to the acts complained of apparently is to be

tractors Ass'n of America v. Mechanical Contractors Ass'n of Northern Cal., 342 F.2d 393 (9 Cir. 1965).

3. 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

4. Cf. Mechanical Contractors Ass'n of America v. Mechanical Contractors Ass'n of Northern Cal., supra.

5. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

6. 265 F.2d 768 (9 Cir. 1959).

7. Exhibit D with defendants' motion to dismiss is the Master Territory Franchise Agreement as revised January 23, 1967, and paragraph 24 thereof relating to venue differs from plaintiff's Exhibit A, viz., Master Territory Franchise Agreement, as revised November 1, 1965, which refers to venue in paragraph 21, and the wording of the two is not the same.

8. See 56 Am.Jur., Venue, Sec. 41; 20 Am.Jur.2d, Courts, Sec. 140.

9. 224 F.2d 806 (1955).

10. 174 F.2d 556 (2 Cir. 1949).

found in Hawaii, this court comes to the conclusion that the jurisdictional agreement was unreasonable and adherence of the parties to that agreement should not here be given effect.

Defendants' motion to dismiss is denied.