STUART M. COWAN, Plaintiff-Appellant, *v.* FIRST INSURANCE COMPANY OF HAWAII, LTD., Defendant-Appellant, and FRANK COTTLE, ARDELL MARINA, INC., and JOHN DOES I-X, Defendants-Appellees

NO. 6251

MARCH 12, 1980

RICHARDSON, C.J., OGATA AND MENOR, JJ.*

---

*Justices Kobayashi and Kidwell, who heard oral argument in this case, retired from the court on December 29, 1978, and February 28, 1979, respectively. HRS § 602-10 (1979 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

OPINION OF THE COURT BY RICHARDSON, C.J.

Plaintiff-appellant Stuart M. Cowan and defendant-appellant First Insurance Company of Hawaii, Ltd. appeal an order entered by the first circuit court of the State of Hawaii dismissing plaintiff's complaint for lack of personal jurisdiction over nonresident defendants-appellees, Frank Cottle and Ardell Marina, Inc. We find that the circuit court erred in failing to find jurisdiction and vacate the order below.

Plaintiff-appellant Cowan (hereinafter plaintiff) is currently and at all times pertinent to this suit was a resident and

citizen of the State of Hawaii. Defendants-appellees, Frank Cottle and Ardell Marina, Inc., are and at all times pertinent to this suit were residents and citizens of California. Defendant-appellee Ardell Marina, Inc. (hereinafter Ardell) is a California corporation engaged in the business of selling yachts and ships with brokerage offices located in Newport, California and Fort Lauderdale, Florida. Defendant-appellee Frank Cottle (hereinafter Cottle) is a yacht broker employed by Ardell.

In his complaint, the plaintiff charged defendants Cottle and Ardell with negligence in the care and custody of his sailboat "Chutzpah" and sought to recover for damages sustained by the boat.[1] The context in which this claim arose and the critical jurisdictional facts are set forth below.

Between 1974 and 1976, Ardell, doing business as Ardell Yacht and Ship Brokers, regularly advertised the sale of boats in national publications including, but not limited to, *Sea Magazine* and *Yachting Magazine* which were distributed and sold in Hawaii. After reading Ardell's advertisements in such publications, the plaintiff in August 1974 wrote a letter to Ardell inquiring as to the use of their services in the sale of his boat "Chutzpah." On behalf of Ardell, Cottle responded to the plaintiff's inquiry in a letter dated August 20, 1974 stating in part:

> I have enclosed a copy of our multiple listing agreement for your inspection, along with a specification form to be filled out if you should decide to list the boat at this time.

The multiple listing agreement forwarded to the plaintiff contained two signature lines, one for the boat owner and one for

---

[1] *Defendant-appellant First Insurance Company of Hawaii, Ltd.*, a Hawaii corporation doing business in Honolulu, is the insurer of the plaintiff's vessel "Chutzpah." Initially, First Insurance was named as a defendant in plaintiff's action after the parties were unable to reach a settlement regarding reimbursable expenses incurred allegedly as a result of the damages sustained by the sailboat while in the care of defendants Cottle and Ardell. On May 6, 1976, a stipulation for dismissal with prejudice was filed between the plaintiff and First Insurance. First Insurance, however, joins the plaintiff in this appeal.

Ardell. At the time of receipt, the agreement was unsigned. The specification form, enclosed in the same letter, contained a single signature line for the boat owner wishing to enlist Ardell's services.

On August 30, 1974, in Honolulu, the plaintiff signed the listing agreement, completed and signed the specification form and mailed them back to Ardell. The terms of the listing agreement established Ardell as the exclusive central agent for the sale of "Chutzpah" at a listing price of $45,000 and set Ardell's commission at ten percent of the gross sales price. If the plaintiff chose to sell his boat on his own while the agreement was in effect, Ardell would nevertheless be entitled to a service fee of three percent of the selling price. The agreement further stated that Ardell would make arrangements for showing the vessel to interested parties and that it would regularly inform the owner of the progress being made toward the sale of the boat. The agreement was to remain in effect "until the boat was sold unless cancelled by either party by written notice which shall be effective sixty days after receipt."

On September 10, 1974, Cottle wrote back to the plaintiff acknowledging receipt of the signed listing agreement and proceeded to advise the plaintiff on the sale of his boat. The listing agreement was not enclosed with the letter and, although bearing a place for countersignature, was in fact never countersigned by Ardell. Given the boat's location in Hawaii, Cottle suggested that "Chutzpah" be advertised in *Sea Magazine* at Ardell's special rates and enclosed the necessary forms. These forms were signed by the plaintiff in Hawaii and mailed back to Ardell; consequently, "Chutzpah" was advertised in the October, 1974 issue of *Sea Magazine*. Shortly after the advertisement was placed, Cottle phoned the plaintiff and, as first suggested in his August 20th letter, urged the plaintiff to relocate the vessel on the west coast to expedite its sale. The plaintiff agreed and at his expense the sailboat was shipped to California and berthed in Ardell's marina where it was allegedly damaged.

To recover for such damages, plaintiff filed suit in Hawaii against defendants Cottle and Ardell. Prior to trial, the defendants moved to dismiss for lack of in personam jurisdiction contending that they lacked the requisite "minimum contacts" with the State necessary to impose jurisdiction under Hawaii's long-arm statute, HRS § 634-35 (1976).[2] It is undisputed that Ardell is not licensed to do business in Hawaii,[3] maintains no offices nor owns any assets in the State, has no agents or representatives residing here, has never been listed in the State's telephone directories, and does not advertise in Hawaii publications. After a hearing, the circuit court granted the defendants' motion to dismiss.

On appeal, the plaintiff contends that, contrary to the determination of the lower court, jurisdiction validly exists under HRS § 634-35. The specific statutory provision relied on, HRS § 634-35(a)(1), provides as follows:

(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of the acts:

(1) *The transaction of any business within this State;*

\* \* \* \* \*

(Emphasis added). The plaintiff argues that the defendants "transacted business" in Hawaii by: 1) entering into a contract in Hawaii with a Hawaii resident undertaking to manage

---

[2] In the pleadings below, the parties cited Hawaii's long-arm statute as HRS § 634-71 (1968). In 1976, the statutory provision was renumbered HRS § 634-35 while remaining substantively unchanged. Without affecting the rights of the parties here involved, we cite the relevant statutory provision throughout this opinion in its current form.

[3] It is well established that a foreign corporation which is not required to register in Hawaii may nevertheless sue or be sued in the State's courts. Benham v. World Airways, Inc., 253 F.Supp. 588 (D.Hawaii 1966). The Court made clear in *Benham* that the definition of the term "doing or carrying on business" in HRS § 418-6 concerning the registration of foreign corporations in Hawaii does not in any way restrict or limit the definition or scope of the term "transaction of any business" in HRS § 634-35, Hawaii's long-arm statute.

the sale of personal property located in the State and 2) soliciting business in Hawaii through advertisements for the sale of yachts and boats placed in national magazines distributed and sold here.

The defendants refute the plaintiff's contentions by arguing that the listing agreement at issue became effective in California, not in Hawaii, and that therefore no contract was formed in the State and no business transacted. The defendants maintain that the only other contact with Hawaii proffered by the plaintiff, advertising in national publications sold here, fails to meet both the statutory and constitutional requirements for asserting jurisdiction over nonresidents.

Hawaii's long-arm statute, HRS § 634-35, was adopted to expand the jurisdiction of the State's courts to the extent permitted by the due process clause of the Fourteenth Amendment.[4] Thus, the issue presented here is whether, pursuant to HRS § 634-35, the defendants' activities in the State constitute the "transaction of any business" in Hawaii and satisfy the requirements of due process.

I.  "TRANSACTION OF ANY BUSINESS" UNDER HRS § 634-35.

Considering the plaintiff's first contention regarding the defendants' contacts in Hawaii, contracting in the State unquestionably constitutes transacting business under HRS § 634-35. Standing Committee Report 805, which accompanied

---

[4] Legislative history shows that HRS § 634-35 was taken from an identical statute of Illinois. *See* Standing Committee Report 805, Judiciary on H.B. No. 969, House Journal General Session at 745 (1965). It is a well-settled rule that the adoption of another state's statute encompasses that state's judicial construction of the statute unless a contrary intent appears. Duple Motor Bodies, Ltd. v. Hollingsworth, 417 F.2d 231, 233 (9th Cir. 1969) (interpreting RLH § 230-41.5(1)(b), currently HRS § 634-35(1)(b)); Palakiko v. Harper, 209 F.2d 75, 102 (9th Cir. 1953); In the Matter of Sawyer, 41 Haw. 270, 273-74 (1956). Prior to the enactment of Hawaii's long-arm statute in 1965, the Supreme Court of Illinois, in Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957), interpreted the relevant statute as expanding Illinois' jurisdiction over nonresident defendants to the extent permissible by the due process clause of the Fourteenth Amendment. We may therefore interpret Hawaii's long-arm statute, HRS § 634-35, as similarly extending the State's jurisdiction over nonresidents.

H.B. No. 969 (the current long-arm statute), explicitly states that "contracting is, under this bill, considered transacting business in the State." House Journal General Session at 745 (1965). The plaintiff posits that Cottle's letter of August 20, 1974, forwarding the multiple listing agreement and general specification form, constituted an offer to sell his boat for a ten percent commission. The defendants' offer was accepted, the plaintiff argues, when he signed the listing agreement and specification form in Hawaii and returned them to Ardell; hence, the contract was executed in this State and supports the assertion of jurisdiction over the defendants.

Opposing the plaintiff's position, the defendants contend that the plaintiff's signing of the multiple listing agreement in Hawaii did not create a binding contract in the State because the agreement was subject to the acceptance of Ardell in California. This is demonstrated, the defendants point out, by the existence of two signature lines on the multiple listing form, one for the boat owner and one for Ardell and by the fact that at the time of receipt by the plaintiff, the agreement was unsigned. Also important to note, the defendants contend, is the fact that until the signed listing agreement and completed specification form were received from the plaintiff, they lacked any detailed information on the "Chutzpah"; without such knowledge, they argue, it would be unreasonable to conclude that they would have accepted the plaintiff's listing. Therefore, the defendants assert, Cottle's letter of August 20th together with the enclosed forms may not be construed as an offer accepted by the plaintiff in Hawaii.

The record reveals that after the plaintiff signed and returned the listing agreement and specification form to Ardell, both parties treated the agreement as binding and proceeded to perform in accordance with its terms. Thus, while the place of contracting is in dispute, the facts clearly establish the existence of a contractual relationship between the parties[5]

---

[5] Following the plaintiff's return of the listing agreement, the actions and communications of the parties establish at the very least an "implied-in-fact" contract. I Williston on Contracts § 3 (1957); Wall v. Focke, 21 Haw. 399, 404 (1913).

and the performance in Hawaii of vital legal acts necessary for the formation of that contract. In view of these facts, we find that the precise time and location at which the contract became binding need not be decided. Courts in other jurisdictions interpreting similar statutes have held that where an interstate contract consummated through the mail or by telephone is involved the place of the last act of execution is not, of itself, determinative of whether any business has been transacted in the forum.[6] *China Union Lines, Ltd. v. American Marine Underwriters, Inc.*, 454 F.Supp. 198 (S.D.N.Y. 1978); *Knight v. District Court of Seventeenth Judicial District, County of Adams*, 162 Colo. 14, 424 P.2d 110 (1967); *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 209 N.E.2d 68 (1965); *G. Benedict Corporation v. Epstein*, 47 Misc.2d 316, 262 N.Y.S.2d 726 (Sup. Ct. 1965). In *Knight v. District Court of Seventeenth Judicial District, County of Adams, supra,* the Supreme Court of Colorado stated:

> [E]ven though the "last act," such as the signing of a contract . . . may have occurred outside the geographical confines of the forum state, nevertheless the statutory test of a claim arising out of the transaction of any business within the state may still be met by the showing of *other* "purposeful acts," performed within the forum state by the defendant in relation to the contract, even though such acts were preliminary, or even subsequent, to the execution of the contract itself.

162 Colo. at 20, 424 P.2d at 112-113. Moreover, it is well established that a nonresident defendant may be found to have transacted business in a state even though neither the defendant, nor any agent of the defendant, had ever been physically present in the forum. *Hawaii Credit Card Corp. v.*

---

[6] In Harry Winston, Inc. v. Waldfogel, 292 F.Supp. 473, 478 (S.D.N.Y. 1968), the Court went so far as to state "the wholly fortuitous circumstance of whether an offer comes from one end of a telephone line or the other, or of whether a contract is mailed last for signing into one state or another, does not seem a proper basis on which to found jurisdiction, either partially or wholly."

*Continental Credit Card Corp.*, 290 F.Supp. 848. (D.Hawaii 1968) (applying HRS § 634-35); *Ziegler v. Houghton-Mifflin Co.*, 80 Ill. App.2d 210, 224 N.E.2d 12 (1967); *Koplin v. Thomas, Haab & Botts*, 73 Ill.App.2d 242, 219 N.E.2d 646 (1966) (the two preceding cases applying the identical long-arm statute of Illinois).

Thus, finding the requisite transaction of business demands an examination of all of the defendants' activities within the forum related to the present cause of action.[7] Here, the defendants entered into a contractual relationship with the plaintiff, a resident of Hawaii; the listing agreement and specification form were mailed by the defendants to the State for the plaintiff's signature. The duties and obligations arising from the contract involved the sale of the plaintiff's boat which initially and for a significant part of the contractual period was located in Hawaii. While the boat was so located, the parties entered into a second contract, this time to advertise "Chutzpah." Again, the necessary documents were mailed to Hawaii by the defendants and signed by the plaintiff in the State. Lastly, in response to defendant Cottle's urging, the plaintiff agreed to and did ship his boat from Hawaii to the west coast. Thus, through interstate communications, the defendants engaged in significant business activity in Hawaii relating to the execution and performance of the listing contract.

In addition, the defendants' contacts with the State include advertising and solicitation that gave rise to the instant cause of action. For at least two years prior to the filing of the plaintiff's complaint, Ardell regularly advertised the sale of yachts and ships in national magazines distributed throughout Hawaii.[8] It was, in fact, such an advertisement which

---

[7] Where one alleges jurisdiction over a nonresident defendant pursuant to Hawaii's long-arm statute, HRS § 634-35(c) requires that the cause of action relate to the defendant's contacts in Hawaii. Commercial Insurance Company of Newark, New Jersey v. Pacific-Peru Construction Corporation, 558 F.2d 948, 955 (9th Cir. 1977); Hawaii Credit Card Corporation v. Continental Credit Card Corporation, 290 F.Supp. 848, 851 (D. Hawaii 1968).

[8] Affidavit of Joseph T. Keifer.

initially led the plaintiff to contact Ardell concerning the brokerage of his sailboat.[9]

Advertising in magazines of national circulation provided the requisite transaction of business in the forum state to subject a nonresident defendant corporation to jurisdiction under Idaho's long-arm statute in *Fullmer v. Sloan's Sporting Goods Co.*, 277 F.Supp. 995 (S.D.N.Y. 1967).[10] In *Fullmer*, an Idaho citizen brought a diversity action against a New York corporation which sold guns and ammunition for negligence and breach of warranty resulting in an explosion of ammunition injuring the plaintiff in Idaho. The Court found, *inter alia*, jurisdiction under Idaho Code § 5-514(a), stating:

> In advertising its products in magazines of national circulation, which led to the sale here involved, defendant was doing an act for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish its business purposes in the State of Idaho which was sufficient to subject defendant to jurisdiction in Idaho. . . .

277 F.Supp. at 997.

Ardell's advertising in national magazines sold in Hawaii served a parallel objective; its advertisements for the sale of ships led to the plaintiff's initial inquiry and eventually to the formation of the contract here at issue. Further, Cottle's letter of August 20th forwarding the contract forms with directions to sign and complete "if you should decide to list

---

[9] Deposition of Stuart M. Cowan.

[10] Idaho's long-arm statute (Idaho Code § 5-514) provides that a corporation submits itself to the jurisdiction of the courts of Idaho as to any cause of action arising out of

(a) the transaction of any business within this state which is hereby defined as the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish . . . the business purpose or objective . . . of such . . . corporation[.]

We find the difference in wording between Idaho Code § 5-514(a) and HRS § 634-35(a)(1) insignificant in regard to the issue of whether advertising in national magazines distributed in Hawaii may be considered as a factor in determining whether a nonresident defendant has "transacted any business" in the State.

. . . at this time," demonstrates the defendants' clear intent to solicit business in the State. Thus, considering all of the defendants' business activities, we find that the defendants did transact business in Hawaii within the meaning of HRS § 634-35(a)(1).

## II. DUE PROCESS REQUIREMENT.

The due process clause of the Fourteenth Amendment of the United States Constitution operates as a limitation on the jurisdiction of state courts over nonresidents. *Kulko v. Superior Court of California in and for City and County of San Francisco,* 436 U.S. 84, 91 (1978). Thus, our application of HRS § 634-35 must comport with the requirements of due process to be valid. The constitutional standard for determining whether the courts of Hawaii may enter a binding judgment against a nonresident defendant is set forth in the United States Supreme Court decision, *International Shoe Co. v. Washington,* 326 U.S. 310 (1945): the defendant must have "certain minimum contacts with [Hawaii] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316 quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940); *see also Creative Leisure International, Inc. v. Aki,* 59 Haw. 272, 273 (1978). While the interests of the forum state and of the plaintiff in the proceeding are to be considered, *see McGee v. International Life Insurance Co.,* 355 U.S. 220, 223 (1957), "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958); *Creative Leisure International, Inc. v. Aki,* 59 Haw. at 273. One must look to the "quality and nature" of the defendant's activity to determine whether it is both "reasonable" and "fair" to require the defendant to conduct his defense in the forum state. *Kulko v. Superior Court of California in and for City and County of San Francisco,* 436 U.S. at 92; *International Shoe Co. v. Washington,* 326 U.S. at 316-317, 319.

Like other tests requiring the determination of reasonableness or fairness, the "minimum contacts" test precludes mechanical application. Instead, "the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Kulko v. Superior Court of California in and for City and County of San Francisco*, 436 U.S. at 92 quoting *Hanson v. Denckla*, 357 U.S. at 246; *see also Kailieha v. Hayes*, 56 Haw. 306, 308 (1975).

The defendants argue that the requirements of due process have not been met in the instant case because their contact with the State consisted solely of interstate communications by mail or telephone. They maintain that such contact is insufficient to meet the "minimum contacts" test, citing *Belmont Industries, Inc. v. Superior Court of Stanislaus County*, 31 Cal.App.3d 281, 107 Cal.Rptr. 237 (1973).[11]

In *Belmont*, the petitioner, a Pennsylvania corporation, entered into a contract with a California corporation for drafting services to be used in a construction project in Maryland. Negotiations were first conducted through the mail and by phone. Later, the California corporation sent a representative to Pennsylvania to confer about the job. Sometime thereafter, in Pennsylvania, the contract was consummated. While it was contemplated by the parties that the California corporation would perform its drafting work in California, it was not required by the terms of the contract and was of no concern to the petitioner so long as the drawings were prepared on time and were in accord with the original specifications. Based on these facts, the Court failed to find any "purposeful activity by petitioner from which it can be inferred that it intended to conduct business in California." 31 Cal.App.3d at 288, 107 Cal.Rptr. at 241 (footnote omitted). The Court noted that the petitioner's only contact with the State was the negotiation of

---

[11] California's long-arm statute, Code of Civil Procedure, Section 410.10, provides:

A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.

the contract through interstate communications and held that under these facts such contact was insufficient to subject the nonresident petitioner to the jurisdiction of the courts of California.

Several key factual differences distinguish the case at hand from *Belmont*. The contract in *Belmont* involved the provision of drafting services which could be performed anywhere and which were intended for use in a construction project located outside of California. In contrast, the instant case involves a listing agreement to sell personal property which at the time of contracting and for a significant period thereafter was located in Hawaii. Further, in *Belmont* there were no obligations or duties set forth in the terms of the contract which required the nonresident petitioner to maintain continual contact with the California corporation or which would require its presence in the forum state. Here, on the other hand, the listing agreement explicitly states that "the owner will be regularly informed of the progress being made toward finding a purchaser for the yacht.'' Furthermore, the listing agreement in the case at hand holds the nonresident defendants responsible for arranging appointments to show the boat.[12] Thus, while the boat was located in Hawaii, this duty potentially would have required Cottle or some other agent of Ardell to come to the State. Lastly, unlike in *Belmont*, the nonresident defendants here demonstrated their intent to conduct business in the State by advertising in various national magazines distributed in Hawaii. In view of these crucial differences, we find the holding of the Court in *Belmont Industries, Inc. v. Superior Court of Stanislaus City*, 31 Cal.App.3d 281, 107 Cal.Rptr. 237 (1973), neither applicable to nor persuasive in resolving the issue before us.

---

[12] This obligation is set forth in the listing agreement as follows:

Ardell is authorized to distribute information describing the yacht to other brokers it judges qualified to negotiate a sale. These brokers will be informed of the vessel's location, price, and availability for showing. *Appointments to show the yacht will be arranged through Ardell*.

(Emphasis added).

Moreover, other courts have held constitutional the assertion of jurisdiction over a nonresident defendant in a breach of contract action where the contract had been negotiated and executed entirely through interstate communications. In *Hawaii Credit Card Corp. v. Continental Credit Card Corp.*, 290 F.Supp. 848 (D.Hawaii 1968), a suit was brought by a Hawaii corporation against a California corporation for breach of a franchise agreement. All contracts negotiated between the plaintiff and the nonresident defendant had been sent to California for acceptance and no corporate officers or employees were ever in Hawaii. The federal district court nevertheless found the assertion of jurisdiction over the defendant and venue in the Hawaii court consonant with the requirements of due process based on the fact that the entire thrust and aim of the defendant's franchise agreements were directed at the market in Hawaii and that the defendant had invoked the power and protections of Hawaii's laws by mailing letters of collection to alleged debtors residing in the State.

Similarly, in *Ziegler v. Houghton-Mifflin Co.*, 80 Ill.App.2d 210, 224 N.E.2d 12 (1967), an Illinois court held a nonresident defendant subject to its jurisdiction in an action involving the breach of a contract consummated entirely by mail and telephone where the defendant had on no occasion during the relevant period entered Illinois. *See also Koplin v. Thomas, Haab & Botts*, 73 Ill.App.2d 242, 219 N.E.2d 646 (1966). In *Ziegler*, the Court based its decision on the fact that the defendant had purposefully solicited the contract with the plaintiff; that after the contract was consummated, the defendant maintained continual contact by mail and telephone with the plaintiff; that the contract offer was accepted by the plaintiff in Illinois; and that the contract had been fulfilled in part in Illinois. In the case at hand, it may likewise be said that the defendants solicited the contract with the plaintiff; that after the contract became binding the defendants maintained contact with the plaintiff by mail and telephone; that the plaintiff signed the contract documents in Hawaii; and that the contract was in part performed in the State. We find

therefore that defendants Cottle and Ardell did purposefully avail themselves of the privilege of conducting business in Hawaii and, hence, satisfy the minimum contacts requirement of due process.

Lastly, the consideration of "reasonableness" further supports requiring the defendants to present their defense in Hawaii. *Kulko v. Superior Court of California in and for City and County of San Francisco*, 436 U.S. 84, 92 (1978). Although the damage to the plaintiff's sailboat allegedly occurred in California, the affidavits submitted indicate that witnesses residing in both Hawaii and California will be called at trial. Witnesses in Hawaii are required to testify as to the seaworthy condition of the boat prior to its shipment to the west coast and to verify the repair work required and the costs incurred by the plaintiff as a result of the alleged damages. Defendant Ardell's business operations span the United States with offices located on both coasts and with nationwide advertising; thus, requiring Ardell to conduct its defense in Hawaii would not entail an insurmountable hardship. Certainly, the inconvenience and expense incurred would be no greater than that which would be imposed upon the plaintiff, an attorney practicing in Hawaii, if forced to bring his action in California.

Accordingly, we conclude that the circuit court erred in granting defendants' motion to dismiss for lack of in personam jurisdiction. The circuit court's order is vacated and the case remanded for further proceedings consistent with this opinion.

*Robert Rau (Cowan & Frey* of counsel) for Plaintiff-Appellant.

*Joseph T. Kiefer (Carlsmith, Carlsmith, Wichman & Case* of counsel) for Defendant-Appellant *First Insurance Company of Hawaii, Ltd.*

*Albert Gould* and *Benjamin L. Carroll III (Gould & McKenzie* of counsel) for Defendants-Appellees *Frank Cottle, Ardell Marina, Inc.*, and *John Does I-X.*