**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000396
21-MAY-2024
07:53 AM
Dkt. 43 SO**

NO. CAAP-19-0000396

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


MADELEINE M. MCKAY, as Trustee of the
Revocable Trust of Madeleine M. McKay, Plaintiff-Appellee,
v.
HUBERT GUEZ, Individually, and as
Trustee of the Guez Living Trust, Defendant-Appellant,
and
DOE DEFENDANTS 1-10,
Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 18-1-0975)


SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Wadsworth and Nakasone, JJ.)

Defendant-Appellant Hubert Guez, individually, and as trustee of the Guez Living Trust (**Guez**), appeals *pro se* from the April 30, 2019 Judgment (**Judgment**) entered by the Circuit Court of the First Circuit (**Circuit Court**),[1] in favor of Plaintiff-Appellee Madeleine M. McKay, as trustee of the Revocable Trust of Madeleine M. McKay (**McKay**). Guez also challenges the April 24, 2019 (1) Order Granting [McKay's] Motion for Summary Judgment (**Order Granting MSJ**) and (2) Order Denying [Guez's] Motion to

---

[1]     The Honorable James S. Kawashima presided.

Dismiss or, in the Alternative, for Summary Judgment for Lack of Personal Jurisdiction (**Order Denying Motion to Dismiss**).

McKay and her late husband were family friends with Guez. After McKay's husband died in 2001, Guez provided advice and counsel to McKay regarding her finances, and on eight occasions between 2003 and 2005, McKay loaned Guez a total amount of $3,150,000, subject to interest, from three separate trusts: the Revocable Trust of Madeleine M. McKay (**Revocable Trust**), the George G.C. McKay Marital Trust (**Marital Trust**), and the McKay Family Trust (**Family Trust**) (collectively, **the Trusts**). Guez executed eight promissory notes (**Notes**), stating that he received certain specified sums, stating certain (various) rates of interest, permitting McKay to demand payment at any time on three or six months notice; on behalf of himself and the Guez Living Trust, Guez stated that he "jointly guarantee[d] the full amount of this note."

Guez made some interest payments on these Notes up until February 2018. On March 1, 2018, McKay, as trustee of the Trusts, demanded that Guez pay the principal and interest due (**Demand**). In the Demand, McKay demanded, *inter alia*, that Guez "pay back all of the amounts I loaned you." Guez made no further payments.

After filing a June 20, 2018 Complaint alleging the breach of four of the foregoing promissory notes, McKay amended her Complaint and filed a First Amended Complaint (**FAC**) on October 18, 2018, adding that Guez breached four additional promissory notes. McKay acknowledged in the FAC that Guez is a

resident of California.  McKay alleged that in 2003, Guez approached her about extending him a loan from the proceeds from her screenplay and funds inherited from her late husband.

McKay alleged that after executing the Notes, Guez made full interest payments only until 2008, thereafter remitted partial payments, then, in February 2018, stopped making any payments.  McKay alleged that she sent Guez the Demand.  McKay requested that Guez pay her the sum of $3,150,000, all interest owed, and for attorneys' fees.

Guez filed an Answer on November 5, 2018, admitting that he entered into various loan agreements with certain trusts associated with McKay, denying the total amount due because principal allegedly had been repaid in part, denying that the Notes called for monthly interest payments and that he fell into arrears, and admitting that McKay made demand for payment and that he has not remitted payments of principal or interest since the Demand.  Guez further denied, *inter alia,* that any Hawaiʻi court has personal jurisdiction over him.

On February 21, 2019, Guez moved to dismiss (or for summary judgment in his favor) based on a lack of personal jurisdiction (**Motion to Dismiss**).  On March 7, 2019, McKay filed a motion for summary judgment on the debt evidenced by the Notes (**MSJ**).  The parties opposed each other's motions, with Guez also filing a separate list of objections to the admissibility of McKay's submissions in support of summary judgment.  Guez filed an *ex parte* motion to appear telephonically.  The Circuit Court received it, but then gave notice to the parties that due to its

improper *ex parte* nature, the court would not be acting on the *ex parte* communication.[2]

A hearing was held on April 3, 2019. The Circuit Court denied the Motion to Dismiss, noting that Guez took McKay's money, the corpus of which was located in Hawaiʻi, that domicile in Hawaiʻi is not necessary to establish jurisdiction, and that issues of fact concerning the court's jurisdiction over Guez precluded granting him summary judgment. The Circuit Court also granted the MSJ. The written orders and Judgment were entered thereafter. Guez timely filed a notice of appeal.

Guez raises five points of error on appeal, contending that the Circuit Court: (1) improperly exercised personal jurisdiction over him; (2) failed to provide Guez with notice and an opportunity to be heard at the April 3, 2019 hearing on the [Guez's] Motion to Dismiss and McKay's MSJ; (3) erred in entering a money judgment in favor of McKay; (4) failed to find an issue of material fact as to the amount claimed by McKay; and (5) improperly awarded McKay attorneys' fees.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Guez's points of error as follows:

(1) Guez argues that he is not subject to the personal jurisdiction of the Hawaiʻi courts because, *inter alia,* he is a

---

[2] Guez made no other attempt to secure permission to appear telephonically.

resident of California, and he did not purposefully avail himself of the privilege of conducting business in Hawaiʻi.

> "A trial court's determination to exercise personal jurisdiction is a question of law reviewable de novo when the underlying facts are undisputed." Shaw v. N. Am. Title Co., 76 Hawaiʻi 323, 326, 876 P.2d 1291, 1294 (1994) (citing Bourassa v. Desrochers, 938 F.2d 1056, 1057 (9th Cir. 1991)). Plaintiffs "need make only a prima facie showing that: (1) [defendant's] activities in Hawaiʻi fall into a category specified by Hawaii's long-arm statute, [Hawaiʻi Revised Statutes (**HRS**)] § 634-35; and (2) the application of HRS § 634-35 comports with due process." Id. at 327, 876 P.2d at 1295 (citing Cowan v. First Ins. Co. of Hawaiʻi, 61 Haw. 644, 649, 608 P.2d 394, 399 (1980)). When the circuit court relies on pleadings and affidavits, without conducting an [sic] "'full-blown evidentiary hearing,'" the plaintiff's "'allegations are presumed true and all factual disputes are decided in [plaintiff's] favor.'" Id. (citations omitted).

City and Cnty. of Honolulu v. Sunoco LP, 153 Hawaiʻi 326, 340, 537 P.3d 1173, 1187 (2023).

It is undisputed that Guez is domiciled in California, rendering general jurisdiction inapplicable. Thus, the issue is whether the court had specific personal jurisdiction over Guez. See Womble Bond Dickinson (US) LLP v. Kim, 153 Hawaiʻi 307, 313, 537 P.3d 1154, 1160 (2023).

> Specific jurisdiction over out-of-state defendants is based on "minimum contacts." International Shoe Co. v. State of Wash. Off. of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945). To protect out-of-state actors' due process rights, courts rely on a three-part specific jurisdiction test: (1) the nonresident defendant must "purposefully avail" itself of the privilege of conducting activities within the forum state; (2) plaintiff's claims "must arise out of or relate to the defendant's contacts" within the forum; and (3) the exercise of jurisdiction must "not offend traditional notions of fair play and substantial justice."

Id. (some citations omitted; cleaned up).

Hawaii's long-arm statute, Hawaii Revised Statutes (**HRS**) § 634-35 (2016) provides, in relevant part:

> **§ 634-35 Acts submitting to jurisdiction.** (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, the person's personal representative, to the

5

> jurisdiction of the courts of this State as to any cause of action arising from the doing of any of the acts:
>
> > (1)  The transaction of any business within this State[.]

"[C]ontracting in the State unquestionably constitutes transacting business under HRS § 634-35." Norris v. Six Flags Theme Parks, Inc., 102 Hawaiʻi 203, 208, 74 P.3d 26, 31 (2003) (quoting Cowan v. First Ins. Co. of Haw., 61 Haw. 644, 652, 608 P.2d 394, 400 (1980)). "[W]here an interstate contract consummated through the mail or by telephone is involved the place of the last act of execution is not, of itself, determinative of whether any business has been transacted in the forum." Cowan, 61 Haw. at 651, 608 P.2d at 400. Thus, even if "the place of contracting is in dispute," should "the facts clearly establish the existence of a contractual relationship between the parties and the performance in Hawaii of vital legal acts necessary for the formation of that contract" occur, HRS § 634-35 applies. Id. at 650-51, 608 P.2d at 400 (footnote omitted).

The Hawaiʻi Supreme Court in Cowan determined that HRS § 634-35(a)(1) applied, in part, because

> the defendants entered into a contractual relationship with the plaintiff, a resident of Hawaii; the listing agreement and specification form were mailed by the defendants to the State for the plaintiff's signature. The duties and obligations arising from the contract involved the sale of the plaintiff's boat which initially and for a significant part of the contractual period was located in Hawaii. . . . Again, the necessary documents were mailed to Hawaii by the defendants and signed by the plaintiff in the State. Lastly, in response to defendant['s] . . . urging, the plaintiff agreed to and did ship his boat from Hawaii to the west coast.

61 Haw. at 652, 608 P.2d at 400. Here, while McKay did not sign the Notes, McKay avers and Guez's assistant Ben Vargas confirmed

6

in an email that the Notes were mailed to McKay in Hawaiʻi (Guez denies this) where McKay resides and the Trusts are domiciled.

Moreover, it is undisputed that McKay transferred Trust funds from the Trusts' bank accounts in Hawaiʻi to Guez in California. According to the Notes, these disbursements occurred on April 6, 2003 (a total of $300,000 from two of the Trusts), April 16, 2004 (a total of $1,000,000 from two of the Trusts), May 25, 2004 (a total of $1,100,000 from two of the Trusts), and April 21, 2005 (a total of $750,000 from two of the Trusts). McKay declared under oath that she is the Trustee of each of the Trusts and that all of the Trusts were created in Hawaiʻi, domiciled in Hawaiʻi, with all of the Trust assets located in Hawaiʻi banks. Guez offered no evidence to the contrary. McKay avers, and Guez does not deny, that Guez was fully aware that McKay resided in Hawaiʻi, that the funds for the loans would be from the Trusts, and that the Trust assets were located in Hawaiʻi. Guez counters, *inter alia*, that the Notes were prepared and executed by him in California. Guez claims the Notes were agreed upon when McKay was in California, but McKay avers (and offers credit card statements supporting) that she was in Hawaiʻi when at least some of the Notes were signed. McKay averred and Guez does not deny that Guez made payments to the Trusts via wire transfers to the Hawaiʻi bank accounts of the Trusts, from 2003 to 2018.

Thus, Guez created a continuous, long-term contractual relationship with McKay, a Hawaiʻi resident, as Trustee of multiple Hawaiʻi Trusts, solicited and received millions of

dollars from the Hawaiʻi Trusts, and sent payments to various Trust bank accounts in Hawaiʻi over a period of roughly 15 years. We conclude that Guez transacted business in Hawaiʻi and, therefore, is subject to HRS § 634-35(a)(1). We turn to whether Guez's due process rights were violated under the minimum contacts test.

The first prong of the minimum contacts test is whether Guez "purposefully direct[ed] activities toward the forum, or perform[ed] some act to invoke the benefits and protections of its laws." Womble Bond Dickinson, 153 Hawaiʻi at 313, 537 P.3d at 1160. "[Guez's] conduct and connection with the forum State [must be] that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). "Even a single act by [Guez] can support jurisdiction if it creates a 'substantial connection' with the forum." PlusFive Claims, LLC v. 0713401 B.C. Ltd., No. 10-1561 SC., 2011 WL 902015, *4 (N.D. Cal. March 14, 2011) (Order) (citing Burger King Corp v. Rudzewicz, 471 U.S. 462, 478 (1985)).

> "Parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." [Burger King Corp., 471 U.S. at 473] (quoting Travelers Health Ass'n v. Virginia, 339 U.S. 643, 647, 70 S.Ct. 927, 94 L.E.d. 1154 (1950)). "Thus, if the defendant directly solicits business in the forum state, the resulting transactions will probably constitute the deliberate transaction of doing business invoking the benefits of the forum state's laws." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 840 (9th Cir.1986) [sic].

Barranco v. 3D Sys. Corp., 6 F.Supp.3d 1068, 1081 (D. Haw. 2014).

Purposeful availment rests mainly on the premise that the defendant's conduct suggests they sought future contacts with

the forum state. For example, the U.S. District Court for the District of Hawaiʻi in <u>Barranco</u> found:

> Plaintiff alleges that 3D Systems directly solicited his business by telephone in Hawaiʻi on March 27, 2011. This phone call led to a meeting between Plaintiff and 3D Systems soon thereafter in Los Angeles, in order to further discuss the sale of the Web Domains. Within sixteen days of their meeting, Plaintiff and 3D Systems executed both the Agreement Letter and the [Purchase Sale Agreement (**PSA**)].
>
> . . . .
>
> In examining the circumstances surrounding the Agreement Letter and the PSA, despite the fact that the negotiations and executions of the contracts did not take place in Hawaiʻi, Plaintiff's factual allegations show that 3D Systems contemplated future contacts with Hawaiʻi. 3D Systems not only agreed to continue to share the revenue that the Web Domains' license fees and royalties generated, but also to employ Plaintiff for five years. In exchange, *inter alia*, Plaintiff was obligated to indemnify 3D Systems in the event of a patent infringement suit and refrain from competing with the Web Domains for five years. Defendants have not presented evidence to the contrary. Taking all the allegations as true, the Court finds that 3D Systems did not simply purchase the Web Domains from Plaintiff. Rather, 3D Systems reached out beyond South Carolina and <u>structured the transaction so as to create a continuing relationship and obligations with Plaintiff in Hawaiʻi</u>, and should therefore be subject to regulation and sanctions in Hawaiʻi for the consequences of their activities. Thus, the Court concludes that Plaintiff has met his burden in establishing that 3D Systems purposefully availed itself of Hawaiʻi laws with respect to Plaintiff's contract claims.

6 F.Supp.3d at 1081 (emphasis added); <u>see</u> <u>also</u>, e.g., <u>BPI Dev. Grp., L.C. v. Grange</u>, 181 F. Supp. 3d 604, 613-14 (S.D. Iowa 2016) (finding the defendant "purposefully availed themselves" because "a reasonable jury could conclude that Defendants sought to 'do business' with Plaintiffs in Iowa by soliciting a loan from Iowa plaintiffs, with repayment to be made to Plaintiffs in Iowa."); <u>PlusFive Claims, LLC</u>, 2011 WL 902015 at *4 ("Numbered Entity allegedly borrowed more than $1.4 million from PlusFive Holdings. When it did so, it purposefully availed itself of the laws of California.").

Guez's dealings with McKay resulted in numerous loans totaling millions of dollars from the Hawaiʻi Trusts between 2003 to 2005.  Guez was required to pay (at least) a yearly interest and the principal amounts over a lengthy, indefinite period to McKay in Hawaiʻi, which he had done at least in part over a 15 year period.  Guez also contacted McKay in Hawaiʻi through Ben Vargas, confirming receipt of wire transfers and that the Notes were mailed out to her in Hawaiʻi.

Guez created a continuing relationship and obligation with McKay and the Trusts in Hawaiʻi such that Guez clearly contemplated future contacts with Hawaiʻi.  See Barranco, 6 F. Supp. 32 at 1081.  Thus, we conclude that Guez's conduct satisfies the first prong of the minimum contacts test.

We next consider whether McKay's claims arise out of and relate to Guez's forum-based contacts:  "a 'connection' between [McKay's] suit and [Guez's] activities."  Sunoco LP, 153 Hawaiʻi at 343, 537 P.3d at 1190 (quoting Ford Motor Co. v. Mont. Eight Jud. Dist. Ct., 592 U.S. 351, 361 (2021)).  We conclude that McKay's breach-of contract claims are based entirely on Guez's alleged Hawaiʻi-contacts.  Accordingly, "there is a clear and unambiguous 'affiliation between the forum and the underlying controversy.'" Id. at 344, 537 P.3d at 1191 (quoting Ford Motor Co., 592 U.S. at 370).

Finally, we consider whether the exercise of jurisdiction over Guez offends traditional notions of fair play and substantial justice; in other words, is it reasonable to assert jurisdiction over Guez.  See id. at 341, 537 P.3d at

10

1188.  Guez bears the burden to prove unreasonability.  See

Impossible Foods Inc. v. Impossible X LLC, 80 F.4th 1079, 1087

(9th Cir. 2023).  The supreme court has adopted a seven-factor

test, as follows:

> (1) the extent of the defendant['s] purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of any conflict with the sovereignty of the defendant['s] state; (4) the forum state's interest in adjudicating the dispute; (5) concerns of judicial efficiency; (6) the significance of the forum to the plaintiff's interest in relief; and (7) the existence of alternative fora.

Sunoco LP, 153 Hawaiʻi at 346, 537 P.3d at 1193 (citation

omitted).

Guez makes no argument on appeal that it is

unreasonable for him to defend McKay's claims in Hawaiʻi courts,

and therefore this argument is waived.  See Hawaiʻi Rules of

Appellate Procedure Rule 28(b)(7).

We nevertheless note that although the extent of Guez's

purposeful interjection into the forum state's affairs is limited

to his dealings with McKay and the Trusts, those dealings took

place over a lengthy period of time and involved a series of

transactions, not just a single incident, and involved millions

of dollars held in trust for the benefit of a Hawaiʻi widow.

Guez has ably represented himself thus far, and the burden on

Guez to defend himself here is no more than the burden that would

shift to McKay if she were forced to pursue repayment to the

Trusts in a California court.  There is no showing of a conflict

with the sovereignty of California, and Hawaiʻi has a strong

interest in providing relief to a citizen who may have been taken

advantage of and whose financial resources have allegedly been

severely depleted by Guez's undisputed refusal to repay moneys he received from multiple Hawaiʻi Trusts.  This forum appears to be highly significant to McKay as this is undisputedly where she resides and, accepting as averred the significant depletion of her financial assets as a result of her dealings with Guez, she may not be in a position to seek repayment in an alternate forum. While an alternative forum exists, the overarching issue remains fair play and substantial justice.  Guez does not dispute borrowing large sums of money from McKay, discontinuing interest payments, and not repaying the full amounts borrowed.  It does not offend the notion of fair play and substantial justice for Guez to litigate the amounts of payments due to the Trusts in Hawaiʻi courts.

We conclude that the Circuit Court did not err in exercising personal jurisdiction over Guez.

(2)  Guez argues that the Circuit Court failed to provide him with notice and an opportunity to be heard at the April 3, 2019 hearing.  Guez engaged in improper *ex parte* communications with the Circuit Court regarding the hearing.  The court notified him of the issue.  He made no attempt to rectify it and did not, for example, seek relief from the court's order based on a misapprehension of the rules (or any other basis). Guez fully briefed all issues before the court at the April 3, 2019 hearing.  The record reflects that the court considered Guez's arguments and determined the matters on the merits.  We conclude that this argument is without merit.

(3 & 4) Guez argues, *inter alia*, that the Circuit Court erred in entering the Order Granting MSJ because no admissible evidence supports the dollar amount of the judgment against him. This argument has merit.

To be clear, Guez does not contest the breach of the repayment obligations stated in the Notes. We conclude that there is no issue of material fact as to whether Guez breached his obligations under the Notes. See HSBC Bank USA, Nat'l Assoc. For Ace Sec. Corp. Home Equity Loan Tr., Series 2006-NC3, Asset Backed Pass-Through Certificates v. Corba, CAAP-20-0000696, 2023 WL 7921534, *1 n.3 (Haw. App. Nov. 16, 2023) (SDO) (citing Cnty. of Haw. v. C & J Coupe Fam. Ltd. P'ship, 119 Hawaiʻi 352, 373, 198 P.3d 615, 636 (2008)). As evidence of the amounts of the indebtedness, McKay relied on a letter, with spreadsheets attached, sent by Na N. Wen, CPA (**Wen**) to McKay's attorney, reporting the loan balances, interest amounts owed, and interest accruing to each of the Trusts (**Letter Report**). **[DKT 14 at 176]** The Letter Report is attached to a declaration of counsel. The record contains no declaration, affidavit, or testimony of Wen. Counsel's declaration merely declares that the exhibit is "a true and correct copy" of the Letter Report. As raised by Guez in the Circuit Court proceeding and on appeal, counsel's declaration does not satisfy Hawaiʻi Rules of Civil Procedure Rule 56(e) with respect to statements of Wen in the Letter Report, which are hearsay. See Hawaiʻi Rules of Evidence (**HRE**) Rule 801; see also Pac. Concrete Fed. Credit Union v. Kauanoe, 62 Haw. 334, 336-37, 614 P.2d 936, 938 (1980) (reference to a ledger, without

authenticated supporting materials, is insufficient to establish payments made, and therefore, summary judgment was improper). The Letter Report is inadmissible hearsay, unless otherwise provided by the HRE. McKay cites no hearsay exception applicable to the Letter Report, and therefore the Letter Report cannot serve as a basis for awarding summary judgment to McKay. <u>See</u>, <u>e.g.</u>, <u>Haw. Cmty. Fed. Credit Union v. Keka</u>, 94 Hawaiʻi 213, 11 P.3d 1 (2000).

Therefore, while there was no genuine issue of material fact as to the establishment of Guez's indebtedness to McKay as Trustee of the Trusts, the Circuit Court erred in granting summary judgment in favor of McKay as to the amounts of Guez's debts to the Trusts.

(5) Finally, Guez argues that even if McKay was entitled to summary judgment, her request for attorneys' fees should have been denied on two grounds: (1) the MSJ did not include a request for attorneys' fees; and (2) the Notes contain no provision for the award of attorneys' fees and HRS § 607-14 (2016) does not support an award of fees in the absence of a fee-shifting provision in the Notes.

First, the MSJ requests an award of attorneys' fees pursuant to HRS § 607-14 on page 9 of the Memorandum in Support, and therefore Guez's first argument is without merit.

The supreme court has conclusively determined that, "[u]nder HRS § 607-14, an action in the nature of assumpsit does not need a clause in writing providing for attorneys' fees in order for attorneys' fees to be granted." <u>Eastman v. McGowan</u>, 86

Hawaiʻi 21, 31, 946 P.3d 1317, 1327 (1997). Guez's argument to the contrary is without merit.

Guez makes no other argument concerning the award of attorneys' fees. Therefore, we conclude that Guez is not entitled to relief with respect to this point of error.

For these reasons, the Circuit Court's April 30, 2019 Judgment is vacated, the April 24, 2019 Order Denying Motion to Dismiss is affirmed, and the April 24, 2019 Order Granting Summary Judgment is affirmed in part and vacated in part. This case is remanded to the Circuit Court for further proceedings consistent with this Summary Disposition Order.

DATED: Honolulu, Hawaiʻi, May 21, 2024.

| On the briefs: | /s/ Katherine G. Leonard |
|---|---|
| | Acting Chief Judge |
| Hubert Guez, | |
| Defendant-Appellant *Pro Se*. | /s/ Clyde J. Wadsworth |
| | Associate Judge |
| Margery S. Bronster, | |
| Jenna L. Durr, | /s/ Karen T. Nakasone |
| (Bronster Fujichaku Robbins), | Associate Judge |
| for Plaintiff-Appellee. | |